APPEALS OF GEORGE M. STUDEBAKER AND CLEMENT STUDEBAKER, JR.

Docket Nos. 3869, 3876.    Submitted July 23, 1925.    Decided October 27, 1925.

> 1. A trust created under a will in respect of the residue of the testator's estate, *held* not to have terminated or become a dry trust prior to the taxable years 1918 to 1920, inclusive.
> 2. The beneficiaries of a trust may not deduct, *pro rata* in their individual tax returns, a net operating loss of the trust.

*Paul E. Shorb* and *Marion P. Wormhoudt, Esqs.,* for the taxpayers.

*E. C. Lake, Esq.,* for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

The appeal of George M. Studebaker involves deficiencies in income and profits tax for the years 1918 and 1919 of $16.57 and $7,851.59, respectively, and an overassessment for the year 1920 in the amount of $933.14.

The appeal of Clement Studebaker, Jr., involves an overassessment for the year 1918 in the amount of $180.58 and a deficiency for the year 1919 in the amount of $2,275.61.

These appeals are based upon the same facts which were stipulated by the taxpayers and the Commissioner.

## FINDINGS OF FACT.

The taxpayers are individuals. George M. Studebaker resides at 620 Washington Street, South Bend, Ind., and Clement Studebaker, Jr., resides at 1601 East Jefferson Boulevard, South Bend, Ind.

The taxpayers are beneficiaries under the last will and testament of their father, Clement Studebaker, who died in 1901. So much of the will as is pertinent to the issues involved in these appeals reads as follows:

Section 6. I hereby give, bequeath and devise to each of my grandchildren, who shall be living at the time of my death, the sum of Ten Thousand Dollars, the same to be paid to said grandchildren as they shall respectively reach the age of twenty-five years, and in case any one of said grandchildren shall die before reaching the age of twenty-five years being unmarried and without issue, then such share of said grandchild shall revert to my heirs at law.

And whereas certain moneys are being expended by me on the education of my grandchild, George M. Studebaker, Jr., and

Whereas, it is my desire that all my other grandchildren living at the time of my death, shall be treated in respect to their education, at my expense equally;

Now, therefore, the Trustees hereinafter appointed are empowered and directed to use out of my estate, such sums as may be necessary from time to time to provide for the education or establishment in life of said grandchildren other than George M. Studebaker, Jr., so as to make the sum so expended on each, equal in amount.

　　*　　　*　　　*　　　*　　　*　　　*　　　*

Section 8. All the rest and residue of my estate both real and personal I give, bequeath and devise to my beloved wife, Ann M. Studebaker, to my children, George M. Studebaker, Anne Studebaker Carlisle, and Clement Studebaker, Jr., to hold the same in trust for and upon the following trust purposes and conditions, to-wit:

Said trustees shall hold, manage, lease, care for and control all the said trust real estate and property "for and during the life of said Ann M. Studebaker and for such further time as all remaining trustees shall all live and shall mutually agree to the conditions of said trust;" but upon the death of any one of my three children following the death of my wife; or in case of disagreement as to the conditions of said trust between my said three children following the death of my wife, Ann M. Studebaker, the trust estate then in the hands of said trustees shall become, belong and be immediately divided in absolute ownership to the following named persons and in the following named portions, to-wit: To my son, George M. Studebaker, one-third; to my daughter, Anne Studebaker Carlisle, one-third; to my son, Clement Studebaker, Jr., one-third; and in case said trust is terminated on account of the death of any one of my said children, then the said share hereby stipulated to go to such child, shall go to his or her estate, to be to them and their heirs forever, subject however, to all bequests, legacies and other provisions named in this will.

Section 9. During the period of said trusteeship, said trustee shall manage, lease, control, care for and protect said trust property and collect all income therefrom all in accordance with their best judgment and discretion; said

trustees are given full power to sell and convey by proper deeds and other instruments without any order of court, any and all said property and any of the reinvestments and accumulations thereto from time to time for such purposes and upon such terms as they shall see fit for the purpose of paying debts, legacies and bequests for reinvestment; also the power at all times to invest such part of said trust estate as may be in or be converted into cash in such income bearing securities or property real or personal as they shall deem best; also the trustees shall be allowed to employ such agents and attorneys as are reasonably necessary in managing and protecting the trust estate and their compensation as well as the reasonable and proper expenditures made or incurred by the trustees in administering the trust shall be repaid and allowed to the trustees out of the trust estate; said trustees shall pay out of the income derived from the property placed in their hands as said trustees to my said wife, Ann M. Studebaker, the sum of Twenty Five Thousand Dollars ($25,000.00) yearly in quarterly amounts during the term of her natural life, the same to be her absolute property in addition to the bequests, gifts, and devises named in Section Two of this will. The trustees shall also pay the sums named in this will to each of my grandchildren in accordance with the terms mentioned in Section Six of this will. They shall also pay the taxes, assessments, insurance and necessary repairs on or against the property now owned by my wife and occupied by her as a home together with the premises adjacent thereto; also the property owned by my wife, and occupied by my daughter, Anne Studebaker Carlisle, as a home together with the premises pertaining and adjacent thereto; also the property owned by my wife and occupied by my son, Clement Studebaker, Jr., as a home, together with the premises pertaining and adjacent thereto. The residue of the income of said trust estate after the payment of said annuity to my wife and the taxes, assessments and insurance and repairs as aforesaid, shall be annually divided equally among my three children which said sums shall be paid to my wife and children by my executors prior to the time of said trustees assuming control of said trust estate; which sums so divided among my three children shall be their own absolute property.

In case of the death, disability or refusal to act as trustee on the part of one or more of the appointees under this will, the remaining members or member shall carry out the trusts herein specified without further additions to their number.

  *        *        *        *        *        *        *

Section 12. I hereby appoint my said wife, Ann M. Studebaker, my son George M. Studebaker, my daughter Anne Studebaker Carlisle and my son Clement Studebaker, Jr., executors as well as trustees under this my last will and testament; and I desire that while my wife lives she shall be considered the principal executor and trustee, and in the event of her death my son George M. Studebaker shall be considered the principal executor and trustee. Moreover, in all matters of business pertaining to my estate, the will of the majority of my executors and trustees shall govern, provided that no matter of business shall be transacted by said executors and trustees, during the life of my said wife which shall not have received her sanction or assent unless otherwise ordered by the court. In case of the death, disability, or refusal of any one or more of said executors to act all remaining executors or executor shall settle my estate, and in no case shall my said executors or trustees be required to give bond in the settlement of my estate or in the carrying out of said trust.

By agreement among my said executors or trustees if where death, disagreement or disability does not occur, a less number than is named herein may settle my estate, and carry out the provisions of said trust, such agreement

however shall be made a matter of record and be by consent of the court in which my estate is settled.

### CODICIL

By this codicil to my foregoing will, which codicil has been executed subsequently to the execution of said will, I do hereby will and direct that wherever in said will any property is given, bequeathed or devised to my daughter, Anne Studebaker Carlisle, in absolute ownership, or in fee that instead of said Anne Studebaker Carlisle having said absolute ownership in said property or said property in fee that her estate in all of said property described in said will shall be and is hereby reduced to a life estate with the privilege of selling and transferring any of said property for the purpose of reinvesting the same in other property of like character or equal value; and the remainder of all of said property shall at the death of said Anne Studebaker Carlisle go to her children equally share and share alike, absolutely and in fee; but this codicil does not deprive said Anne Studebaker Carlisle of any of the annual dividends or the income from any of the property given and devised to her under said will but the same shall be hers absolutely.

\*       \*       \*       \*       \*       \*       \*

The taxpayers, their sister, Anne S. Carlisle, and their mother, Ann M. Studebaker, qualified as trustees under the will and administered the trust.

Ann M. Studebaker, the widow of the testator, died in 1916. At the time of her death the corpus of the trust consisted principally of farm land. Thereafter, the taxpayers and their sister, Anne S. Carlisle, continued the operation of the farm and other property, keeping books of account, employing a farm superintendent and other necessary help.

The books and accounts of trust disclose net operating losses of $18,019.94 for 1918; $9,143.09 for 1919; and $11,994.61 for 1920.

Each taxpayer took as a deduction on his return for the year 1920 one-third of the net operating loss of the trust for that year and claimed a like deduction for the years 1918 and 1919.

With reference to the bequests of $10,000 to each of the testator's grandchildren reaching the age of 25 years, the record discloses the following: On February 14, 1919, $10,000 was credited to Anne S. Carlisle, who assumed the indebtedness of the trust in that amount to her son, Charles Carlisle, Jr. On June 4, 1919, a similar amount was credited to the account of Clement Studebaker, Jr., who assumed the indebtedness in that amount to his son, Clement Studebaker, 3rd. On March 20, 1920, $10,000 was credited to the account of Anne S. Carlisle, who assumed the indebtedness in that amount to her daughter, Catherine Carlisle Weinrichter. On December 7, 1922, the trustees paid in cash $5,000 principal and $140.83 accrued interest to Woodson S. Carlisle. On March 15, 1923, they paid in cash to Woodson S. Carlisle $5,000 principal and $223.33 accrued interest. On February 15, 1924, Esther Studebaker received in cash from the trustees $2,000 principal and on August 21, 1924, she received accrued interest in the amount of $545.00.

DECISION.

The determination of the Commissioner is approved.

OPINION.

LITTLETON: Two questions are presented by these appeals: First, whether or not the trust under the will of Clement Studebaker in respect of the residuum of his estate terminated on the death of his wife, Ann M. Studebaker, and thereby vested the said property in the beneficiaries as tenants in common; second, whether or not, - assuming that the trust was not terminated on the death of Ann M. Studebaker, the beneficiaries are entitled to deduct in their individual income-tax returns, *pro rata* shares of net operating losses suffered by the trust during the taxable years 1918, 1919, and 1920. If the trust did terminate on the death of Ann M. Studebaker and the property vested in the beneficiaries as tenants in common, the tax-payers operated in their own rights with respect to the property thus acquired, and no question could arise as to their right to deduct in their individual tax returns the losses resulting from such operations.

It is contended by counsel for the taxpayers that when, on the death of Ann M. Studebaker, the obligation to pay the annuity provided for her under the will ceased there remained no further duties to be performed by the taxpayers as trustees, and the trust became a dry trust from that date, and further, that when the trust became dry the legal and beneficial titles to the trust property merged and the trust ceased to exist. If it were true that no further duties remained to be performed by the trustees after the death of Ann M. Studebaker, there might be a legal basis for the taxpayers' contention. The facts in the case, however, do not support this assumption. By section 6 of his will the testator devised to each of his grandchildren living at the time of his death the sum of $10,000 when the said grandchildren should respectively reach the age of 25 years. He further directed that the trustees under the will should use out of his estate such funds as were necessary to provide for the education or establishment of each of his grand-children in the same manner that the testator had previously provided for George M. Studebaker, Jr. Under section 9 the testator directed that the trustees should also pay the sums named in the will to each of the grandchildren in accordance with the terms of section 6 of said will. With reference to the education of the children, as directed in section 6, the record is silent. It does not appear whether this duty of the trustees has been performed or not. As to the payment of the specific legacies of $10,000 to each of the

grandchildren reaching the age of 25, the record discloses that performance had not been completed at the time of the death of Ann M. Studebaker in 1916. It further appears that part performance under this provision took place at a date as recent as August 21, 1924, but the record does not show that performance in this regard has been completed at the present date. In view of these facts we are not justified in holding that the trust became dry on the death of Ann M. Studebaker, thereby merging the equitable and legal titles to the trust property in the beneficiaries.

It is also contended on behalf of the taxpayers that under the provisions of the will the trust could not continue after the death of Ann M. Studebaker, unless the remaining trustees mutually agreed to continue the same, and that there is no evidence to show that there was such mutual agreement between the trustees. In this respect it may be stated that, from the facts, it appears that the trustees continued the operation of the trust property in the same manner and under the same conditions as it had been operated prior to the death of Ann M. Studebaker, and there is nothing in the record to show any intention on their part to consider it in any other manner than trust property. Since all their actions were such as would indicate that the trust was continued, the burden is upon the taxpayer to show affirmatively that they did not mutually agree to continue the trust.

Even though the trustees might have mutually agreed to terminate the trust, it is doubtful if they could have done so, so long as the duties imposed upon them as trustees had not been fully performed, and in this case we have seen that the legacies to the grandchildren of the testator had not been paid during or prior to the taxable years in question. Although there may have been considerably more than enough trust property to pay these legacies, the record does not show it.

The remaining point to be determined is, whether or not the taxpayers, as beneficiaries under the trust, are entitled to claim, as deductions in their individual returns, *pro rata* shares of the net operating losses of the trust during the taxable years in question. The provisions governing the allowance of deductions on account of losses for these years are found in section 214 of the Revenue Act of 1918. So much of that section as applies to this discussion reads as follows:

SEC. 214. (a) That in computing net income there shall be allowed as de ductions:

\*        \*        \*        \*        \*        \*        \*

(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business;

(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for profit,

though not connected with the trade or business; but in the case of a non-resident alien individual only as to such transactions within the United States;

(6) Losses sustained during the taxable year of property not connected with the trade or business (but in the case of a nonresident alien individual only property within the United States) if arising from fires, storms, shipwreck, or other casualty, or from theft, and if not compensated for by insurance or otherwise.

Under these provisions a taxpayer is entitled to deduct losses sustained during the taxable year, if incurred in trade or business, or if incurred in any transaction entered into for profit though not connected with the trade or business, or arising from fires, storms, etc. There are no further provisions in the Act which allow deductions for losses sustained in any other manner. It is difficult to see how a taxpayer can claim a loss for something that was never his, or a loss from a transaction in which he as an individual was not interested, even though at some future date it might affect the income or the capital distributed to him from the trust. With reference to the losses here in question it can hardly be argued that they were sustained by the taxpayers in their trade or business, or in any transaction entered into by them for profit. Acts done by the taxpayers in their individual capacities and those performed by them as trustees are separate and distinct, and losses sustained by them as trustees can not be claimed as losses sustained as individuals. In *Baltzell* v. *Casey*, 1 Fed. (2d) 29, the court said:

There is no legal identity between a trustee and a cestui que trust  *  *  *.

See also *Merchants' Loan & Trust Co.* v. *Smietanka*, 255 U. S. 509.

In support of the contention that Congress intended that beneficiaries under a trust should be permitted to deduct their share of net losses suffered by the trust, taxpayers' counsel have referred to section 204 of the Revenue Act of 1918, which prescribes the manner in which taxpayers may claim deductions on account of net losses. Subdivision (c) of that section reads as follows:

The benefit of this section shall be allowed to the members of a partnership and the beneficiaries of an estate or trust under regulations prescribed by the Commissioner with the approval of the Secretary.

It is argued that the refusal to permit deductions by beneficiaries on their individual returns on account of net losses suffered by the trust will nullify the provision quoted above. How this conclusion was reached does not appear, for it seems quite clear that this provision permits the application of a net loss suffered by a trust in one year to be applied against the net income of the trust in another year for the purpose of determining the shares of

income which are to be distributed to beneficiaries. Since under section 204 (a) the "term 'net loss' refers only to net losses resulting from  *  *  ·*  (1) the operation of any business regularly carried on by the taxpayer,  *  *  *·" and a trust which distributes all of its income periodically is not taxable, subdivision (c) was added in order that the beneficiaries might, in determining their distributive shares, apply against the net income of one year the net loss of the other. Furthermore, section 204 does not add other losses to those for which deductions are allowed under section 214 (a), but merely extends the scope for applying the losses which are allowed under that section. It does not appear, therefore, that this provision is subject to the interpretation asked by the taxpayers.