## APPEAL OF HELENE R. McCONNELL.

Docket No. 435.  Submitted May 21, 1925.  Decided January 6, 1926.

> The taxpayer received income from an estate under the provisions of the will of a decedent who died in 1905.  *Held*, that the total amount of the income received was liable to income tax. *Irwin* v. *Gavit*, 268 U. S. 161.  *Held, further*, that the taxpayer is not entitled to a deduction from gross income for exhaustion by reason of the fact that her interest in the estate of the decedent was only a life interest.

*H. F. Garrity* and *L. C. Cooper, Esqs.*, for the taxpayer.
*John D. Foley, Esq.*, for the Commissioner.

Before GRAUPNER, LANSDON, LITTLETON, and SMITH.

This is an appeal from the determination of a deficiency in income and profits tax for the years 1918, 1919, and 1920, in the amount of $1,638.86.  The appeal was submitted on the petition and answer.

### FINDINGS OF FACT.

The taxpayer is an individual residing in Philadelphia, Pa.  She is the granddaughter of one Frederick A. Poth, who died January 21, 1905, leaving a will with two codicils attached.  So much of the will and codicils as is pertinent to the issues involved in this appeal reads as follows:

> The residue of my estate shall be held and invested by my Executors and Trustees in the following manner.  They shall not be obliged to dispose of my investments but shall continue the same as long as they deem it advisable, they may sell the personal estate in whole or in part, and only so far as regards the real estate as hereinbefore provided, they shall keep all my real estate in first class order and repair, they may also sell and resell any personal investments they may make, they are authorized to invest and reinvest any funds coming into their hands in only good income yielding real estate, first class mortgages and in the United States, state or municipal bonds as the laws of the State of Pennsylvania authorize Trustees to make.  Provided, however that my Executors and Trustees shall retain and make investments in such personal securities as can be readily turned into cash, so much of my estate as may be necessary to meet the bequests hereinafter directed to be paid out of the principal of my estate to my children or their issue when the same shall become payable to them under the terms of this will.
>
> Eighth. I direct my Executors and Trustees to pay out of the principal of my estate, not earlier than one year after my death unto such of my daughters as may then have attained the age of twenty one years and such as may thereafter and as they attain the age of twenty one years, and unto such of my sons as may then have attained the age of twenty four years and such as may thereafter and as they attain the age of twenty four years, each the sum of twenty five thousand dollars.  And I further direct as each of my children male or female, arrive at the age of forty years there shall be paid unto her or him, each the further sum of twenty five thousand dollars, Pro-

vided however, from the sums so as aforesaid ordered to be paid to them, there shall be first deducted from the share of each respectively the total amount appearing and charged on my books against such respective child as advancements or loans. In the event of the death of any of my said children, before receiving the sums so directed to be paid to them, leaving issue, then such issue shall receive the parent's share when as he, she or they arrive at the age of twenty one years and in default of such issue the same to revert to and become part of my estate.

Ninth. I direct that for, during and ensuing the term of ten years from the date of the execution of my will the income of my estate shall be distributed and applied as follows. That after the payment of the sum of twenty four thousand dollars to my wife for life, one half of the net income thereof shall be distributed semi-annually to and among my children in the following proportions and shares the said one half of the net income shall be divided into as many shares as there are children, or representations of deceased children, and such of my daughters that have attained and shall attain the age of twenty one years and such of my sons as have attained and shall attain the age of twenty four years shall each receive one equal share of the said one half net income of my estate, and those of my daughters under the age of twenty one years and my sons under the age of twenty four years shall each receive but one half of such share which form of distribution shall continue in such ratio or proportions until all my daughters arrive at the age of twenty one years and all of my sons arrive at the age of twenty four years and thereafter said one half of the net income of my estate shall be equally divided amongst them share and share alike. Provided the share of each of my daughters who have attained or shall attain the age of twenty one years and of each of my sons who have attained or shall attain the age of twenty four years shall not exceed the sum of twelve thousand dollars per annum, and the shares of daughters under the age of twenty one years and sons under the age of twenty four years shall not exceed the sum of six thousand dollars each per annum, and the surplus shall fall into and become part of my residuary estate.

And the remaining one half of the net income and surplus of the above mentioned one half, if any there be, shall fall into and become part of my residuary estate during the continuance of the said ten years after the execution of this will to be by my executors and trustees invested as hereinbefore provided.

After the expiration of ten years from the date of this will subject to the annual payments of twenty four thousand dollars to my wife, the entire net annual income of my estate shall be distributed semi-annually in equal shares to and among my children for and during the term of their natural lives. Should any of my children die during the continuance of the trust under this will leaving issue surviving at the time of the death of such child, then such issue shall take the share of the income the parents would have taken if living during the continuance of the trust under this will. Provided however in the event of the death of any of my children who may be or should become married leaving issue or not to survive them, the husband of any of my daughters and wife of any of my sons so surviving shall receive one fourth of the income said daughter or said son would have received under the terms of this will had she or he have lived, only during the term of the natural life of such husband of any of my daughters who may become deceased and during the term of the natural life of such wife of any of my sons who may become deceased. Should such husband of any of my daughters so dying or the wife of any of my sons so dying remarry, or should he or she in any way commit any crime

or lead an immoral life and not continue to be possessed of a good moral character said bequest of such income shall immediately cease and determine. Any of my daughters or sons may by a last will or any paper writing in the nature thereof expressly provide that her husband or his wife shall not receive the said one fourth of her or his share of the income so given by me after her or his death.

Tenth. It shall be the duty of my Executors and Trustees to collect the rents issues and profits of the residue of my estate and after deducting therefrom the expenses of the trust taxes, charges, repairs and other expenses, thereof, I will and direct they shall pay semi-annually, the balance of the income as follows, subject to and in the proportions and shares aforesaid:

a. They shall hold the net income in trust for my children surviving me at the time of my decease and the lawful issue of such as may then be dead. Such issue taking by representation the share the deceased parent would have taken if then alive.

b. They shall pay to each of my children who may have arrived at the age of twenty one years at the time of my death or who may thereafter arrive at said age, and to the lawful issue of such as may then be dead, their shares respectively of the said income, subject as hereinbefore provided.

c. Should any of my children die during the continuance of the trust under this will leaving issue surviving at the time of the death of such child, then such issue shall take the share of the income the parent would have taken if living during the continuance of the trusts hereunder.

d. No one of the beneficiaries under the provisions of this will shall have any right to anticipate, sell, assign encumber or in any manner or way whatever to dispose of such income or the principal of his, her or their estate or interest before the same shall be actually received by and come into such beneficiaries possession and that the same shall not be liable for the debts, contracts or engagements of such beneficiaries in any way whatever.

e. I direct that during the minority of my said children or the issue of any deceased child, the Trustee shall expend for the maintenance and support of each of them out of the foregoing income that they will receive into their hands for said minors, such sums as they may deem advisable, the balance of such income remaining they shall hold for such minor children or the issue of any deceased child until they arrive at the age of twenty-one years, or the lawful issue of any of them as may become deceased, otherwise said balance shall lapse and become part of my residuary estate.

f. In all instances touching the distribution of the income of my estate, in which the question may arise, the issue of any deceased child or descendant of such child shall take per stirpes and not per capita.

Eleventh. The Executors and Trustees shall retain possession of my residuary estate during the life time of my last surviving child, and during this time the income shall be divided among my children and their issue as hereinbefore provided.

At the termination of the trust, after the death of my last surviving child, the principal of the estate then remaining in the hands of the Executors and Trustees shall then be divided among the issue of my children per capita, and the issue of any of them that may then be deceased taking per stirpes and not per capita. I desire such distribution of such remaining residue to be made between my grandchildren equally per capita, so that each of my grandchildren shall be treated alike and take alike, the issue however of any deceased grandchild to take per stirpes.

Upon the determination of the foregoing trust my Executors and Trustees may, if they deem it advisable, divide my estate in the shares as above pro-

vided among the beneficiaries in kind, first placing upon the same a fair and just valuation and dividing the same into lots as may be convenient and adopt any method which may be equitable to the parties in interest. I direct my Executors and Trustees shall hold meetings as they may determine and keep minutes and records of their actions, which books shall be open to reasonable inspection of any party in interest. I further direct that no inventory and appraisement of my estate be filed unless my Executors and Trustees shall otherwise deem it advisable.

     \*       \*       \*       \*       \*       \*       \*

I Frederick A. Poth the within named testator do hereby make and publish this second codicil to my last will and testament bearing date the 31st day of May A. D. 1898, in the manner following to wit:   \*  · \*   \*

Second. I do hereby revoke absolutely such portions of my will which provide that in the event of the death of any of my children leaving issue, such issue shall take by representation the share or shares of my estate his, or her or their parent or parents would have taken if living, and instead thereof, I do hereby direct that in the event of the death of one of my children, leaving issue, then such issue shall take by representation such share of the principal or income of my estate, his, her, or their parent would have taken if living, subject of course to the shares of the husband or wife of my said child would be entitled to receive under the terms of this will. And in the event of the death of more than one of my children, leaving issue, then such issue of all of my children that may be deceased, shall take per capita the collective shares of principal and income of my estate their deceased parents would have taken if living, subject of course to the share the husband or wife of my said children would be entitled to receive under the terms of this will.

On August 30, 1915, Mrs. George J. Roesch, mother of the taxpayer, died, leaving two daughters, the taxpayer and Claire Roesch. The taxpayer's father died within a few months after the death of her mother.

On May 26, 1907, an agreement was executed between the trustees of the estate of Frederick A. Poth, deceased, and F. A. Poth and Sons, Inc., whereby the corporation leased the premises upon which the brewery buildings owned by the estate were located for the sum of $120,000 per annum, plus 70 per cent of the net profits of the brewery in excess of $60,000. With these changes the business and estate continued unaltered from that time until the year 1921. In that year the rental paid by the corporation to the estate was reduced, the corporation having suffered during the previous year heavy loss due to the advent of prohibition.

The book value of the various properties owned by the estate of Frederick A. Poth was as follows:

| | |
|---|---:|
| Parkside Avenue, west of Forty-second Street | $449,999.95 |
| Viola Street | 185,000.00 |
| Parkside Avenue, east of Forty-second Street | 381,178.75 |
| Forty-second Street, Memorial and Marlton Avenues | 305,987.34 |
| Powelton Avenue, east of Thirty-fourth Street | 126,815.17 |
| North Thirty-fourth Street | 39,837.45 |
| Powelton Avenue, west of Thirty-fourth Street | 105,974.30 |

| | |
|---|---:|
| North Thirty-fifth Street | 45,000.00 |
| Spring Garden Street | 79,976.75 |
| North Twenty-ninth Street | 35,683.65 |
| 216 North Thirty-third Street and 1804 Pacific Avenue | 128,475.00 |
| Sundry houses | 94,757.74 |
| Saloon properties | 187,567.49 |
| Narragansett and Haines Streets | 140,000.00 |
| Lots | 85,501.69 |
| Brewery property | 1,052,038.45 |
| Value of brewery stock, 2,348 shares, at $250 | 587,000.00 |
| Mortgages | 33,000.00 |
| | 4,064,093.00 |

Under the second codicil of Poth's will, the taxpayer, so long as Poth's remaining children lived, took one-half the income of the sixth portion theretofore distributed to her mother, and, as others of Poth's children died, she took her *per capita* share of the total of such children's shares added together, and her ultimate income from and share of the corpus of the estate is measured by the number of per capita shares into which its income and corpus may be divided as sons and daughters of Poth die from time to time until the death of the last survivor of Poth's children. But for this contingency of a different *per capita* division from the *per stirpes* division, the value of the taxpayer's expectancy would be $112,891.49. Under the conditions of the will, however, that amount is subject to increase or decrease, depending upon the number of grandchildren who survive their parents.

For the five years immediately preceding March 1, 1913, the total income of the estate from the brewery was as follows:

| | |
|---|---:|
| 1908 | $274,685.68 |
| 1909 | 285,139.16 |
| 1910 | 331,723.76 |
| 1911 | 252,568.00 |
| 1912 | 197,898.59 |

For the years 1920 and 1921 the income of the estate from the brewery was as follows:

| | |
|---|---:|
| 1920 | $171,610.57 |
| 1921 | 100,000.00 |

#### DECISION.

The determination of the Commissioner is approved.

#### OPINION.

SMITH: The appeal of the taxpayer is based on three points: First, that the receipts from the estate of Frederick A. Poth did not constitute income; second, that if the amounts received from the

estate during the taxable years are considered income they should be reduced by depreciation of the taxpayer's life estate due to the lapse of time; and, third, deductions should be allowed for obsolescence of the life estate due to the passage of the prohibition amendment.

Under the will of Frederick A. Poth, the residue of his estate was left to trustees, who were to exercise absolute control over the property so long as any of the children of the testator should live, and to pay the income of the estate to these children annually in the proportions specified in the will. In the event of the death of one child leaving issue, such issue would take, by representation, the parent's share of the income, subject to an allowance for life of one-fourth of such share to the husband or wife, as the case might be, of such deceased child, or, in the event of the death of more than one child, the issue of such deceased children were to take *per capita* the combined shares of their parents, subject to the allowance for life to the surviving parents.

On August 30, 1915, the taxpayer's mother died leaving two children, the taxpayer and a sister. Within a few months after the death of the mother their father died, leaving the mother's share of income from the estate to the daughters.

It is argued in behalf of the taxpayer that the amounts received by the taxpayer from the income of the estate are in the nature of a devise or bequest, and that, under the provisions of section 213 (b) of the Revenue Act of 1918, devises and bequests are excluded from gross income. It is also argued that the amounts in question do not come within the meaning of the word " income " as used in the sixteenth amendment, and that the mere fact that, under section 219 (d) of the Revenue Act of 1918, the income of an estate which is distributed to beneficiaries periodically in accordance with the provisions of the will is included in the income of the beneficiary, can not convert the amounts distributable into income if they are not in fact income within the meaning of the sixteenth amendment.

This point is governed by the decision handed down by the United States Supreme Court on April 27, 1925, in the case of *Irwin* v. *Gavit*, 268 U. S. 161. In that case an individual was entitled to receive a certain proportion of the income of an estate until such time as the testator's granddaughter, who was 6 years of age at the time of the testator's death, should reach the age of 21, unless she should die before reaching the age of 21, in which event the individual's right to receive the income would terminate on the death of the granddaughter. The court held that the income of the estate distributable to the taxpayer under the will was income to the taxpayer within the meaning of the sixteenth amendment, the Revenue Act

of 1913, and the definition of income as previously laid down by that court in *Eisner* v. *Macomber*, 252 U. S. 189. The court said:

The statute in Section II, A, subdivision 1, provides that there shall be levied a tax " upon the entire net income arising or accruing from all sources in the preceding calendar year to every citizen of the United States." If these payments properly may be called income by the common understanding of that word and the statute has failed to hit them it has missed so much of the general purpose that it expresses at the start. Congress intended to use its power to the full extent. *Eisner* v. *Macomber*, 252 U. S. 189, 203 [U. S. Tax Cases, 196]. By B. the net income is to include " gains or profits and income derived from any source whatever, including the income from but not the value of property acquired by gift, bequest, devise or descent." By D. trustees are to make " return of the net income of the person for whom they act, subject to this tax," and by E. trustees and others having the control or payment of fixed or determinable gains, &c., of another person, who are required to render a return on behalf of another are " authorized to withhold enough to pay the normal tax." The language quoted leaves no doubt in our minds that if a fund were given to trustees for A for life with remainder over, the income received by the trustees and paid over to A would be income of A under the statute. It seems to us hardly less clear that even if there were a specific provision that A should have no interest in the corpus, the payments would be income none the less, within the meaning of the statute and the Constitution, and by popular speech. In the first case it is true that the bequest might be said to be of the corpus for life, in the second it might be said to be of the income. But we think that the provision of the act that exempts bequests assumes the gift of a corpus and contrasts it with the income arising from it, but was not intended to exempt income properly so called simply because of a severance between it and the principal fund. No such conclusion can be drawn from *Eisner* v. *Macomber*, 252 U. S. 189, 206, 207 [U. S. Tax Cases, 196]. The money was income in the hands of the trustees and we know of nothing in the law that prevented its being paid and received as income by the donee.　•

*　*　* This is a gift from the income of a very large fund, as income. It seems to us immaterial that the same amounts might receive a different color from their source. We are of opinion that quarterly payments, which it was hoped would last for fifteen years, from the income of an estate intended for the plaintiff's child, must be regarded as income within the meaning of the Constitution and the law. It is said that the tax laws should be construed favorably for the taxpayers. But that is not a reason for creating a doubt or for exaggerating one when it is no greater than we can bring ourselves to feel in this case.

The remaining contentions of the taxpayer that, in the event the Board should decide that the amounts received under the will from the income of the estate were income to the taxpayer, allowance should be made for the depreciation of the taxpayer's life estate due to the lapse of time and for obsolescence of such life estate due to the passage of the prohibition amendment, will be considered together, since the deductions claimed on account of depreciation and obsolescence are governed by the same provisions of law. Section 214 of the Revenue Act of 1918 reads in part as follows:

(a) That in computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(8) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence; \* \* \*

The taxpayer does not contend that she is entitled to deductions on account of the property belonging to the estate or on account of obsolescence of the brewery business because of the advent of prohibition. She does claim, however, that she has a life estate of determinable value and is entitled to an allowance for the exhaustion of this estate due to lapse of time, and, further, that prohibition has seriously impaired the value of the life estate for which allowance should be made by way of obsolescence. From the language just quoted, it is clear that there is no basis for such deductions as contended for by the taxpayer. Deductions for exhaustion, wear and tear, and obsolescence are allowable to an individual only in respect of property used in trade or business, and, regardless of whether or not the taxpayer has a life estate of the value contended for, and regardless of whether or not her share of income from the estate was materially reduced by the advent of prohibition, it can not be said, under the most liberal construction, that the taxpayer's right to share in the income of the estate was property used in the trade or business.

JAMES, concurring: I am of the opinion that the decision in this appeal is governed by *Irwin* v. *Gavit* as above set forth, and I concur in the decision only for that reason. I agree also that the question here involved is not a question of depreciation of a life interest, but is the more fundamental question whether the so-called income received through an estate or trust by life tenants is in fact in any proper sense all income to the life tenant.

We have been for many years familiar with the valuation of estates for inheritance, transfer, and estate-tax purposes, whereby definite and determined values are placed on the inheritance, or transfer or bequest of property to life tenants. These values, plus the values of the remainders, are necessarily the values assigned to the entire property transferred by the devise. The difference in these estates is well recognized both in law and in fact, and it is recognized that the life tenant receives under such circumstances something which has capital value, and upon which taxes on inheritances and bequests are imposed and paid. The Federal Government has itself imposed inheritance taxes (in 1898), although in later years it has chosen to impose the death duties in the form of an estate tax which graduates the tax in accordance with the entire property passing instead of in accordance with the value passing to each particular heir, legatee, or devisee. It would be an anomalous situation, indeed, if the Fed-

eral Government, imposing an inheritance tax, held that for the purpose of that tax a life tenant might be in receipt of something of capital value, and then held, after that transfer had paid its contribution to the public revenue, that all of the amounts received year by year constituted income subject to taxation again. It seems to me perfectly clear that the amount received under these circumstances is a mixture of capital and income, the life tenant year by year receiving a portion of that value which was originally estimated as his capital, thereby diminishing his interest in the capital as the years go by. It is likewise true, it seems to me, that the remainderman, as the years pass and his expectancy of ultimate receipt of the property approaches, has a greater and greater interest in the capital which comes to fruition at the death of the life tenant and the actual passing of title and possession. Whether upon the happening of the latter event the remainderman is in receipt of income in the amount of the difference between the value of the property received at that time and the value based upon the remainder interest when the original estate or trust came into existence, is a further question of interest not immediately at issue in this appeal, but probably a necessary corollary of the reasoning set forth above.

It seems to me that the fallacy of treating as income all the receipts, under the circumstances of this appeal, becomes clear if we consider the effect which would result from such a rule in the case of an outright purchase of an annuity, an uncommon thing in the United States, but a very common practice in most European countries. Annuities may readily be purchased on the basis of the life expectancy of the annuitant and, like ordinary life insurance, are figured upon the period of time expected to elapse between the beginning of the payment of the annuity and the death of the annuitant. The computation is merely the reverse of the computation involved in life insurance. It seems perfectly clear to me that if a person purchased an annuity for $100,000 he would be entitled to treat as a return of capital that pro rata portion of each annuity payment necessary to produce $100,000 out of the total expected annuities.

Such an annuitant is in no different position from the recipient of a life estate or from the recipient of an annuity from a life insurance company in those cases where provision has been made that the beneficiary should take a certain sum per annum for life in lieu of the gross face amount of the policy.

I am not unmindful of the fact that in the instant appeal the interest of the taxpayer in her grandfather's estate which she inherited on the death of her mother was contingent upon the total number of grandchildren then living who should survive their re-

spective parents, and upon her surviving the last of Poth's children to die, and that her annual distribution was subject to be increased or decreased as her uncles and aunts died leaving more or less than two children surviving. As set forth in the findings of fact, this contingency was apparently not considered in the facts pleaded by the taxpayer, and the value of the life interest of the taxpayer at the death of her mother can not, therefore, be computed from the data submitted. In view of the decision in this appeal, this point is immaterial. It is introduced merely to show one of the elements of difficulty surrounding the treatment of a portion of a life estate with a contingent remainder in corpus as a return of capital, although such difficulty is in the last analysis a mere problem in valuation, far less difficult in its intrinsic features than many problems of March 1, 1913, value, with which the Board and the courts are constantly struggling.

LITTLETON concurs in the views above expressed.