## APPEAL OF JULIA N. DE FOREST.

Docket No. 5857.    Decided September 25, 1926.

On June 21, 1920, the petitioner and others, being the owners of an undivided interest in a patent and licenses issued thereunder, transferred their interests in said patent and licenses to a trustee, in trust, for the purpose of enforcing all rights under the patent and collecting the royalties under the licenses then existing or which might thereafter be made, paying the necessary charges and expenses, and turning over the net moneys received by him to the grantors in proportion to their respective shares, semi-annually or oftener in his discretion, during the remaining life of the patent and licenses of four years and twelve days. *Held*, that in the circumstances of this proceeding petitioner was entitled to a deduction for 1920 and 1921 for the exhaustion of her interest in the patent.

*Robert Thorne, Esq.*, and *J. S. Y. Ivins, Esq.*, for the petitioner.
*Percy S. Crewe, Esq.*, for the Commissioner.

This is an appeal from the determination of deficiencies in income tax for the calendar years 1920 and 1921, in the amounts of $3,916.63 and $5,032.31, respectively, arising from the refusal of the Commissioner to allow a deduction for exhaustion of a certain fractional interest in a patent, such deduction being a certain proportion of the royalties on such patent received and paid over by a trustee to the petitioner, which she claims represented a return of capital.

### FINDINGS OF FACT.

The petitioner is a resident of New York City. On June 7, 1920, her husband transferred to her as an absolute gift, 333 shares of the common stock of the Vacuum Cleaner Company of New York, which company was at that time in process of liquidation pursuant to action taken on June 2, 1920, at which time there were 4,491 shares of common stock outstanding and no preferred stock. The assets in the hands of the directors of the corporation, as trustees in dissolution, consisted principally of a patent (No. 847,947, granted March 19, 1907) on vacuum cleaners and certain other patents on improvements thereto, and license agreements, whereby the Vacuum Cleaner Co. had licensed different manufacturers to make vacuum cleaners under its patent. The license agreement provided for the payment of royalties during the life of the principal patent.

The license agreements provided for rebates to the licensees when royalties received by the licensor for a given year should exceed a stated sum. Allowing for rebates made under this provision, the net

royalties received by the corporation for the calendar years 1916, 1917, 1918, and 1919, were as follows:

| Period covered: | Amount |
| --- | --- |
| Year ended December 31, 1916 | $94, 692. 89 |
| Year ended December 31, 1917 | 136, 481. 78 |
| Year ended December 31, 1918 | 139, 060. 84 |
| Year ended December 31, 1919 | 331, 208. 74 |

These royalties were paid quarterly. The net royalties for the four quarters last completed before the dissolution of the corporation, that is, from April 1, 1919, to March 31, 1920, were $413,239.27. At the time of dissolution of the corporation, the patent had until March 19, 1924, to run, and the owners thereof were entitled to receive under the license agreements royalty payments for four full years less only the last twelve days of March, 1924.

On June 21, 1920, the patents and license agreements were assigned in dissolution of the corporation to the stockholders, including the petitioner, in undivided shares.

On June 21, 1920, the stockholders transferred their undivided interests in the patents and license agreements to Frank H. Jones, in trust, for the purpose of enforcing all rights under the patents and collecting the royalties under the license agreements then existing or which might thereafter be made, paying the necessary charges and expenses, and turning over the net moneys received by him to the grantors in proportion to their respective shares, semi-annually or oftener in his discretion.

Acting under such authority, the trustee received net royalties as follows:

| Period covered: | Amount |
| --- | --- |
| June 21, 1920, to December 31, 1920 | $358, 086. 46 |
| Year ended December 31, 1921 | 410, 206. 23 |
| Year ended December 31, 1922 | 445, 520. 02 |
| Year ended December 31, 1923 | 539, 282. 99 |
| From January 1, 1924, to March 19, 1924 | 245, 053. 78 |
|  | 1, 998, 149. 48 |

After deducting expenses, the trustee distributed the royalties periodically among the persons who had conveyed the patents to him.

There were no sales of stock of the Vacuum Cleaner Co., no sales of undivided interests in the patents and license agreements, and no sales of beneficial interests under the trust, at or near the time of the dissolution of the corporation and creation of the trust.

The fair market value of the patents and license agreements thereunder on June 7, 1920, and on June 21, 1920, was $1,600,000.

The value as of June 21, 1920, the date when these patents and license agreements were transferred to Jones as trustee, spread over

the exact period of the remaining life of the patents to March 19, 1924, would require a deduction for exhaustion of the patents as follows:

| | |
|---|---:|
| From June 21, 1920, to December 31, 1920 | $227, 066. 56 |
| For the calendar year 1921 | 427, 212. 88 |
| For the calendar year 1922 | 427, 212. 88 |
| For the calendar year 1923 | 427, 212. 88 |
| From January 1, 1924, to March 19, 1924 | 91, 294. 80 |
| | 1, 600, 000. 00 |

In his information return for 1920, the trustee reduced the royalties received by expenses and by $227,066.56 for exhaustion of the patents. He indicated the balance after such reduction divided ratably among the beneficiaries as their respective distributive shares of the net income of the trust, this petitioner's share so indicated being $\frac{333}{4491}$, or $8,787.47.

The petitioner in her income-tax return for 1920 reported $8,787.47 as income from the trust.

The Commissioner's field auditor found the total royalty receipts in 1920 by the trustee, less expense, to have been $345,578.75, and this petitioner's share of the total royalty receipts, less expense, to have been $25,624.05, and the Commissioner in auditing her return for that year increased the petitioner's distributive share of income from the trust by $16,836.58, thereby increasing her income tax for that year by the sum of $3,916.63, which is the deficiency appealed from.

In 1921 the total net royalty receipts, after expenses, as found by the Commissioner's field auditor, were $392,936.62, while the proportionate deduction for depreciation or exhaustion for that year was $427,212.88, leaving no part of the net royalties collected for that year attributable to income.

The petitioner in her income-tax return for 1921 reported no income from the trust.

The field auditor found the petitioner's share of the total net royalty receipts for 1921, after expenses, to have been $29,135.73, and the Commissioner in auditing her return for that year increased the petitioner's distributive share of income from the trust by that amount, thereby increasing her tax for that year by $5,032.31, which is the deficiency appealed from.

#### OPINION.

LITTLETON: The issues in this appeal are, first, the value of petitioner's interest in the patent, licenses, etc., on June 21, 1920, the date of acquisition, and secondly, whether an allowance should be

made for the exhaustion of such patent and licenses owned by a trust, the income of which was distributed periodically, in determining the distributive share of the beneficiary subject to tax.

We believe from the evidence submitted that the petitioner has established a value of $1,600,000 for the patent on June 21, 1920. This value was determined by persons who were best in a position to compute it. The patent had been declared valid by the courts, and the article covered by it had been manufactured for many years; it had come to be almost a household necessity—at least the demand for it was established and permanent. The income from sales was gradually increasing from year to year and the persons interested in it were justified in believing that during the remainder of its life the annual royalties would be greater than in prior years. The article was being manufactured and sold under various licenses, and while the royalties therefrom could not be computed with mathematical precision, the owners were able from information in their possession, and from that obtained by investigation as to the probable annual production in 1920, and the four subsequent years, closely to approximate the actual value on June 21, 1920. We do not know what value if any the Commissioner determined for the patent, or if he undertook to determine a value, what method he used. Upon all of the evidence, we approve the petitioner's valuation of $1,600,000 on June 21, 1920.

The amount of the total royalties received by the trustee and the petitioner's proportion thereof are admitted.

In making the information return, the trustee determined the net income of the trust for the purpose of computing the distributive shares of the beneficiaries by deducting from the total royalties received all proper expenses, etc., and exhaustion computed upon a valuation of $1,600,000 over the remaining life of the patent, of $227,066.56 for 1920, and $427,212.88 for 1921, and showed the distributive share of the petitioner to be $\frac{383}{4491}$ of the net income so computed, or $8,787.47 for 1920. And for 1921, after computing the deduction for exhaustion, there was no net income of the trust and therefore the petitioner returned no taxable income.

The petitioner returned as income only her distributive share of the income from the royalties, after taking into consideration the deduction for exhaustion of the patent and the ordinary and necessary expenses of the trust. The Commissioner refused to approve this method of determining the net income of the beneficiary, and recomputed her income by eliminating the amount claimed for exhaustion of the patent.

We believe the Commissioner's determination to be erroneous, for the reason that he has misconstrued the law relating to the situation in this proceeding.

Section 219 (a) of the Revenue Acts of 1918 and 1921 provides that the tax imposed by sections 210 and 211 shall apply to the income of any kind of property held in trust, including income which is to be distributed to the beneficiaries periodically, whether or not at regular intervals. Subsection (b) of section 219 of the Revenue Act of 1918 provides that the fiduciary shall be responsible for making the return of the income of the trust for which he acts, and that the *net income* of the trust shall be computed in the *same manner* and on the *same basis* as provided in section 212, with certain exceptions not material here. Section 212 provides that the term "net income" means the gross income as defined in section 213, less the deductions allowed by section 214. Section 214 provides that in computing net income there shall be allowed as a deduction a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business. Subsection (d) of section 219 provides that in cases where the income of the trust is to be distributed to the beneficiaries periodically, which was the situation in this proceeding, the *tax shall* not be paid by the fiduciary, but there *shall* be included in computing the net income of each beneficiary his *distributive share*, whether distributed or not, of the *net income* of the trust for the taxable year, or, if his net income for such taxable year is computed upon the basis of a period different from that upon the basis of which the *net income* of the trust is computed, then his *distributive share* of the *net income* of the trust for any accounting period of such trust ending within the fiscal or calendar year upon the basis of which such beneficiary's net income is computed.

In the Revenue Act of 1918, Congress ignored for taxing purposes the separate entity of the trust when the income is to be distributed periodically, but it retained the entity of such trust for the purpose of determining *net income* and the *deductions* allowed by section 214, for the purpose of determining the beneficiary's distributive share of such *net income* upon which he should be taxed, whether distributed or not, precisely as it did in the case of partnerships and personal service corporations in section 218.

Congress recognized in section 219, subsections (a) (4), (b), and (d) that the trust would have title to the property and that the income would first be received or accrue to it before it became taxable income to the beneficiaries, and under these circumstances it was provided that the beneficiaries should be liable to tax only upon their *distributive shares* of the *net income* of the trust determined after de-

ducting, among other items, *exhaustion* of the trust property. We are not concerned with the amount actually received by the beneficiary, but only with his distributive share determined as provided by the statute. . The beneficiary may actually receive $400,000 in his taxable year, but only that portion thereof which remains after the *net income* of the trust is computed under sections 212, 213, and 214, is taxable income to him. If, in determining the *net income* of the trust for the purpose of arriving at the beneficiary's distributive share thereof, the deductions exceed the gross income of the trust, the beneficiary has no distributive share and is liable to no tax in respect of the income of the trust.

We conclude therefore that for the year 1920 petitioner was liable to tax only upon her distributive share of the net income of the trust determined by deducting therefrom exhaustion of the patent.

Section 219 of the Revenue Act of 1921 contains language different from that used in section 219 of the Revenue Act of 1918. It provides in (a) that the tax imposed by sections 210 and 211 shall apply to the income of any kind of property held in trust, including (4) income which is to be distributed to the beneficiaries periodically, whether or not at regular intervals. Up to this point the statute says merely that such income shall be subject to the tax. Then subsection (b) states that the fiduciary shall be responsible for making the return of income for the trust for which he acts. That is, he must make a report of the gross amount received by him as trustee. Then it is provided that the net income of the trust shall be computed in the same manner and on the same basis as provided in section 212, which defines net income, except that contributions or gifts to institutions specified in section 214 (a) (11) may be deducted without limitation. This means that the trustee shall, in computing the net income of the trust, be entitled to the deductions specified in section 214, which include exhaustion, wear and tear of property.

Then follows a sentence which states that the fiduciary shall include in the return a statement of the income of the trust which, pursuant to the instrument or order governing the distribution, is distributable to each beneficiary, whether or not distributed before the close of the taxable year for which the return is made. Subsection (c) declares that (1) in case of income received by estates of deceased persons during the period of administration or settlement of the estate, (2) income accumulated in trust for the benefit of unborn or unascertained persons or persons with contingent interests, and (3) income held for future distribution under the terms of the will or trust, the tax shall be imposed upon the net income (computed in accordance with sections 212, 213, and 214) of the trust and shall be paid by the fiduciary. Subsection (e) provides that when the income

of the trust consists both of income which is to be distributed periodically and other income, there shall be allowed as an additional deduction in computing the net income of the trust that part of its income which, pursuant to the instrument or order governing the distribution, is distributable during the taxable year to the beneficiaries.

The foregoing provisions of the statute were intended only to govern the determination of net income and the payment of the tax thereon by estates and trusts and were not intended to change or modify any other provision relating to the determination of the net income of and deductions allowed individuals whether they be beneficiaries of such estate or trust or not.

Subsection (d) of section 219 provides that the fiduciary shall not pay the tax upon the income which is to be distributed periodically to the beneficiary but that, in computing the net income of each beneficiary, there shall be included that part of the income of the trust for its taxable year which, pursuant to the instrument or order governing the distribution, is distributable to him, whether distributed or not, or, if his taxable year is different from that of the trust, then there shall be included in computing his net income his distributive share of the income of the trust for its taxable year ending within his taxable year.

There is no language in this statute which says, or which by necessary implication may be construed to provide, that a beneficiary may not in any case claim a deduction for exhaustion of property from which the income upon which he is taxable was derived. The Commissioner relies upon the separate entities of fiduciary and beneficiary, but there is no reason why Congress may not, if it so desires, ignore the fiduciary in respect to all or a portion of the income of the trust. We think it intended to do so in cases of the character of the one before us. The statute directs that the income of the trust which is distributed periodically shall be excluded from the income of the trust and be taxed to the beneficiary to whom it belongs under the instrument creating the trust, and where it is shown, as it was here, that it was the beneficiary who created the trust for himself and that he is also the remainderman, we find no justification for the conclusion that he may not get the benefit of the allowance for the exhaustion of his property temporarily and for convenience only in the hands of a trustee to collect the income and pay it to him. We think in cases of this character the separate entity of fiduciary and beneficiary should be ignored and that the petitioner should be allowed a deduction for the exhaustion of her interest in the patent.

*Judgment for the petitioner.*