## THE STATE *v.* THE NEW ORLEANS GAS LIGHT AND BANKING COMPANY.

The third section of the act of 14th March, 1839, requiring the Banks in the city of New Orleans to settle, and pay in gold and silver, the balances due to each other, every Monday, imposed no duty not previously required by law ; and if the party in whose favor it was stipulated choose to waive the right, the State cannot complain, without showing some injury resulting therefrom to the community.

An act of incorporation may be forfeited by misuse or abuse. It is a tacit condition of such a grant, that the grantees shall act up to the end or design for which they were incorporated ; and where they do not, the rights and privileges granted may be withdrawn. But the misuse or abuse must be first judicially ascertained.

Banks, insurance, canal, bridge, and turnpike companies, the stock of which is owned by private individuals, are essentially private corporations.

The existing law of the State forms as much a part of the contract in every act of incorporation, so far as it is applicable, as it does of every contract between individuals.

The tenth title of the first book of the Civil Code relative to corporations, applies to every charter granted since its adoption, unless there be something in the latter repealing or suspending its provisions.

Since the act of 14th March, 1839, relieving the Banks of this State from the forfeiture of their charters, occasioned by their suspension of specie payments, no Bank can suspend specie payments, even for a day, without exposing its charter to forfeiture.

APPEAL from the District Court of the First District, *Buchanan, J.*

*Roselius,* Attorney General, for the State.

*G. Strawbridge* and *Grymes,* for the appellees.

GARLAND, J. The petition represents that, in the year 1835, the legislature incorporated the New Orleans Gas Light and Banking Company, with certain capital, rights, and privileges. That the charter was granted on the express and implied condition that the Company should at all times pay all its notes and liabilities in

lawful money of the United States, and that if said Company should, at any time, suspend payment as aforesaid, for the space of ninety days, then the charter should be, *ipso facto*, forfeited. That said obligation not only results from the express provisions of the charter, but is implied by the nature of every bank charter granted by the legislature.

It is further alleged that the said corporation, in May, 1837, suspended the payment in specie of its notes and obligations, which was persisted in until the month of December, 1838. That in March, 1839, the legislature passed an act relieving the different Banks of the State from the forfeiture of their charters, incurred by that suspension. That in this law it was provided that all the Banks, the Gas Light Bank among others, should pay or settle every Monday morning in gold or silver, the balances that each might owe to the other Banks. That the Bank should publish, at least once a month, a statement of its condition, in some newspaper in the city of New Orleans, showing the amount of its circulation, deposites, specie in the vaults, and other assets and liabilities. That the remission of the forfeiture was granted, on the express condition, that the Bank should comply with these conditions, and should not in future suspend or refuse the payment in specie of any of its notes or obligations. The petition then alleges a violation of these obligations in not paying weekly the balances in gold or silver, in not publishing monthly statements, and in suspending payments on or about the 18th of October, 1839, whereby it is alleged that the charter is forfeited. A dissolution of the corporation is prayed for, and an order that the institution may be put in liquidation as required by law. The answer is a general denial.

By the twenty-fifth section of the charter, the Company is prohibited from suspending or refusing payment in lawful money of any of its notes, bills, obligations, or deposites ; and if it shall at any time suspend or refuse payment as aforesaid, the holder of the bill, &c. is entitled to recover interest on said note or bill, at the rate of ten per centum per annum ; and if said suspension or refusal shall continue for a period of ninety consecutive days, then the charter shall be, *ipso facto*, null and void. Session Acts of 1835, p. 104.

It is not denied that the Bank suspended specie payments in

May, 1837, and resumed again in December, 1838. On the 14th of March, 1839, the legislature passed an act, the preamble to which recites that the Banks throughout the United States and this State had suspended specie payments in 1837, the result of a general derangement in the monetary system of the country, and that as the Banks in this state had resumed specie payment, this act provided, that such of the Banks as had forfeited their charters by a refusal to pay their votes and obligations in specie at any time prior to the passage of the act, should be reinstated in all the powers, rights, and privileges conferred upon them by their respective charters, notwithstanding any forfeiture already incurred, to the same extent as if no such forfeiture had ever existed, *provided* that this act shall not be so construed or understood as to authorize any future suspension by any of the Banks of the payment of their obligations in specie. Acts, 1839, p. 68, sec. 1. The third section of the same act makes it the duty of the Banks to pay their weekly balances in specie, and to publish monthly statements of their situation.

The evidence shows that the monthly statements have been regularly published. That since the 7th of January, 1840, no balances have been due to other Banks. Previous to that time, the balances were paid in currency satisfactory to the Bank or Banks, to which the balance was owing. Whenever the balances were demanded in specie, the Bank paid them in that medium. It did not refuse in any instance, but as often paid in specie paying notes as in specie. On the 19th of October, 1839, the Bank passed a resolution suspending payments in specie of its bills and obligations, which suspension continued until the 7th of January, 1840, when it again resumed, and has continued to pay in specie ever since. There is no evidence that, during this last suspension, any bill or note was presented for payment, and payment in specie refused.

The alleged ground of forfeiture, that the defendants have not published monthly statements of the condition of the institution, is not sustained by the testimony, the Cashier having proved that they were published as required.

The obligation to pay the weekly balances to other Banks in specie, is declaratory only. The act imposes no other duty than

was previously required by law ; and if the party in whose favor
it was stipulated, choose to waive it, the State cannot complain,
without showing that some injury has resulted therefrom to the com-
munity, whose guardian it is.   This obligation will, however, be
considered more appropriately under the third ground of alleged
forfeiture.

Before proceeding to the consideration of the last ground of for-
feiture, it may be proper to state that, it is now well settled, that
an act of incorporation may be forfeited for a misuse or abuse of
the powers entrusted to it.   It is a tacit condition of a grant of
incorporation, that the grantees shall act up to the end or design·
for which they were incorporated.   If they do not, the rights and
privileges granted may be withdrawn.   Angel & Ames on Cor-
porations, 510.   2 Term Rep. 515.   9 Cranch, 51.   4 Wheaton,
658, 659.   1 Blackstone, 485.   2 Kyd on Corp. 474.   But this mis-
user or non-user of its franchises, must be judicially ascertained.
Chancellor Kent, in his Commentaries, vol. 2, p. 251, says, it is an
old and well established principle of law, that a corporation is not
deemed dissolved by reason of a mis-user or non-user of its fran-
chises, until the default has been judicially ascertained and de-
clared.   In the case of *The King* v. *Amory*, 2 Term Rep. 515,
the Court of King's Bench held the same doctrine.   A Bank
whose stock is owned by private individuals is essentially a pri-
vate corporation, though its objects, uses and operations partake
of a public nature ; and the same may be said of insurance, ca-
nal, bridge and turnpike companies.   A right of property is, there-
fore, vested, of which these corporations should not be divested
for light causes.

We also take it to be undeniable that, in every act of incorpor-
ation, the existing law of the State forms as much a part of the
contract, so far as applicable to the corporation, as it does of a
contract between individuals ; and we hold that the tenth title of the
first book of the Civil Code in relation to corporations, is applica-
ble to every charter made since its adoption, unless there be some-
thing in the latter showing a repeal or a suspension of its provisions.
Article 438 of the Civil Code is in accordance with the established
principles of both the Civil and Common Law, and shows that the
legislature in some cases, and the judiciary in all others, have as

much authority over corporations as over individuals, and can take from them their chartered rights if they abuse their privileges, or refuse to comply with the conditions on which such privileges were granted.

In this case the abuse complained of is, that the Company, for about eighty days, suspended or refused to pay its notes and liabilities in specie. We know of no greater abuse of privileges or neglect of duty than this, on the part of a banking corporation; and if there was no sufficient justification for it, in the circumstances of the case, we should not hesitate to pronounce it a sufficient ground of forfeiture. But it is earnestly contended in this case, that the Bank may suspend, at any time it pleases, for the space of ninety days, without incurring a forfeiture. We do not think so. Previous to the act of March 14th, 1839, there might have been much force in such an argument; but since the enactment of that law, none of the Banks in this State have a right to suspend specie payments for one day longer than the acts of the last legislature now authorize. The act of 1839 reinstated the Banks in all their rights and privileges, but, in doing so, the legislature said that it was not to be considered as authorizing any future suspension; and it is a great mistake to suppose that this Bank can, at any time it pleases, suspend the payment of its notes and obligations in specie, for a period not exceeding ninety days, upon the payment of ten per cent interest only.

Upon looking into the testimony in this case, we find, although it is stated that the Board of Directors passed a resolution on the 19th of October, 1839, to suspend specie payments, that there is no evidence of an actual refusal on the presentment of any of its notes or obligations for payment. An effort was made to prove that two or more notes or bonds given to the Bank of the United States were not paid at maturity. This appears to have been the case; but the Cashier of the Bank testifies that they never were presented for payment. It is not shown that any public inconvenience or injury has resulted from the passing of this resolution; and it may be, had the supposed inquiry been gone into, that the defendants could have shown some cause sufficient to excuse the adoption of such a resolution, or even a temporary suspension of

specie payment, and that the penalty would be too great for the offence.

The judgment of the District Court is therefore annulled, and the case remanded to the District Court for a new trial. The costs of the appeal to be paid by the defendants.