# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## Bond, Guardian, v. Godsey.

### July 4, 1901.

1. CURTESY—*Commuted Value—Minerals—Unopened Mines—Timber.*—In estimating the commuted value of an estate by the curtesy in lands, chiefly valuable for the timber thereon and the minerals underlying it, but upon which no mines have been opened, the value of the minerals should be deducted from the gross value of the land, as the life tenant has no interest in, and no right to open and work, unopened mines. Whether the value of the timber should be deducted will depend on the facts of the particular case. For the rights of a tenant for life in minerals, see opinion of the court.

Appeal from a decree of the Circuit Court of Wise county, pronounced September 7, 1900, in a suit in chancery, wherein the appellant was the complainant, and the appellee and others were the defendants.

*Reversed.*

This was a suit brought under the statute for sale of infants' lands, and was duly proceeded in as such. The facts sufficiently appear in the opinion of the court.

*R. T. Irvine* and *W. H. Bond,* for the appellant.

*G. M. Edmonds,* for the appellee.

KEITH, P., delivered the opinion of the court.

Julia A. Mann died seized of a certain parcel of land in Wise county, only a small part of which was arable, and the chief value

of which consisted in the forests which covered the greater part of it, and the coal beneath its surface, in which no mine had been opened. She left four children, one of whom, after the death of her mother, married J. L. Godsey, and had issue born alive, and then both the mother and infant died. The other three children of Julia A. Mann are infants under the age of twenty-one years, and this suit was brought by their guardian to sell the land, and to ascertain the interest of Godsey as tenant by the curtesy.

Godsey filed his answer, in which he expresses his willingness to take a gross sum in the proceeds of the sale of the realty in lieu of a life estate therein. The real estate was sold for $2,917.60, and the cause was referred to a commissioner to "ascertain whether defendant Godsey is entitled to curtesy in said land, and if so, to what sum in lieu of curtesy he is entitled." The commissioner reported upon the evidence before him that Godsey had fulfilled all conditions necessary to his title as tenant by the curtesy. He reported that the land has little value except for its woods and minerals; and, inasmuch as the mines had not been opened, and the life tenant would have no right in the coal, he proceeded to estimate the commuted value of Godsey's interest in the one-half of the one-fourth of the proceeds of sale, that being the share to which his deceased wife would have been entitled; and he reports that, basing his estimate upon that sum, Godsey would be entitled to the gross sum of $283.54.

To this report Godsey excepted, claiming that the commutation should have been based upon the entire value of his wife's one-fourth interest in the subject, without any deduction on account of coal.

The guardian for the infants excepted upon the ground that the commissioner should have deducted from the gross purchase price not only one-half, as representing the value of the coal, but one-half of the remaining half as the value of the wood and timber upon the surface.

The court sustained the exception of Godsey, and entered a decree in his favor for the sum of $567.08, less his share of the costs. An appeal was allowed from this decree, and the two exceptions mentioned present the only issue which we are called upon to consider.

It is settled law that a life tenant has no interest in, and no right to open and work unopened mines. He may open new pits or shafts for working an old vein of coal; he may sink new shafts into the same veins; he may penetrate through a seam, or open and dig into a new seam which underlies the first, and take coal to any extent from the mine already opened, but he may not open mines. He is guilty of waste if he does, and equity will enjoin him from its commission. These propositions are so well established as to scarcely need citation of authority in their support. See *Williamson* v. *Jones*, 43 W. Va. 562, where the cases upon the subject are exhaustively considered and discussed. *Clavering* v. *Clavering*, 2 Peere Williams, 388; 1 Washburn on Real Property (4th ed.), 144; *Findlay* v. *Smith*, 6 Munf. 134; *Crouch* v. *Puryear*, 1 Rand. 258; *McCauley* v. *Dismal Swamp*, 2 Rob. 507; *Carr* v. *Carr*, 4 Dev. & B. (N. C.) 179; *Conner* v. *Shephard*, 15 Mass. 154; *West Moreland Co.'s Appeal*, 85 Pa. 344; *Marshall* v. *Mellon*, 179 Pa. 371.

In Rogers on Mines (2 ed.), 258, it is said that "where a tenant for life has committed waste by opening mines, the produce of the mines belong to the remainderman, and the tenant for life is not even entitled to the interest of the produce."

It is not claimed in this case that the mine had ever been opened, but the land in this respect, it is conceded, remains in a state of nature.

As the life tenant is not permitted to open mines, and as the presence of coal beneath the surface contributes in large measure to the value of the fee simple estate, it might reasonably be assumed that the tenant for life who consents to commute his interest and receive a sum in gross in lieu of that life estate

would only be entitled to a sum fixed by ascertaining the present value of that portion or proportion of the entire subject which he would have been permitted to enjoy, and the authorities, so far as accessible to us, seem to establish this position.

In 2 Scribner on Dower (2d ed.), it is said: "There is a material difference in value between the estate of a tenant who is, and that of one who is not, liable to impeachment for waste.  A tenant for life subject to impeachment for waste, cannot sell the timber growing on the lands, nor take the produce of mines un-opened, both of which are the property of the person entitled to the inheritance.  Where the entire estate is sold, the purchase money is increased by that which belongs to the inheritance, either as the price of the standing timber which the tenant for life could not cut, or as the price of the remainder or reversion from which the tenant for life could have derived no profit; and therefore it would seem to be clearly improper to award to him the interest upon any portions of the purchase money which represent those prices."

We are of opinion, therefore, that the value of the coal as fixed by the commissioner's report should have been deducted.

The doctrine of the English courts which prohibits the life tenant to cut wood or timber, except for firewood, fencing, and such uses as come under the denomination of estovers, has been subject to important modifications in this country, growing out of the different conditions existing in England, where the land has been cleared, the due proportion between woodland and cleared land fixed by long experience, and where the diminution of the proportion of woodland to arable land might be deemed an injury to the heir or remainderman, and a comparatively new and un-developed country, such as ours, where increasing the area of cleared land, so far from being deemed a wrong to the heir or remainderman, is often a benefit to him.  Therefore, the law of waste as administered in England is subject to many changes and modifications with us to adapt it to the wholly different circum-

stances and conditions by which we are surrounded.   See *Findlay* v. *Smith,* 6 Munf. 134; *McCauley* v. *Dismal Swamp,* 2 Rob. 530.

Applying these principles to the case before us, we are indisposed to sustain the position of the appellant with respect to the value of the wood upon the land, especially in view of the fact that the commissioner, who examined the witnesses and made an intelligent report in the case, was of opinion that the value of the timber should not be deducted in ascertaining the interest of the life tenant, and upon this point his report was approved by the judge of the Circuit Court.   It does not clearly appear from the record what is the value of the timber, and the surrounding circumstances and conditions are not sufficiently disclosed to enable us to say with confidence that, in this respect, there is error in the decree.   We are, therefore, of opinion to overrule this assignment of error, and proceeding to enter such decree as the Circuit Court should have entered, we ascertain the commuted value of the life tenant to be as established by the commissioner's report.

*Reversed.*