## McFadden's Estate.

*Mines and mining—Principal and income—Coal royalties—Life estate.*

Where a testator devises the residue of his estate to a trustee to ·pay the net income therefrom to testator's wife for life and the principal over, with no power of sale, royalties from a coal lease of land with no open mine thereon, made by the trustee after the testator's death, are to be considered principal and not income; and this is the case although the testator in his lifetime agreed to lease another tract of coal land adjoining the tract leased by the trustee, and a mine was opened thereon in testator's lifetime.

Argued March 26, 1909. Appeal, No. 56, Jan. T., 1909, by the Equitable Trust Company, trustee, from decree of O. C. Phila. Co., July T., 1895, No. 15, dismissing exceptions to adjudication in estate of Charles McFadden, deceased. Before MITCHELL, C. J., FELL, MESTREZAT, ELKIN and STEWART, JJ. Reversed.

Exceptions to adjudication of ANDERSON, J.

From the record it appeared that Charles McFadden at his death in 1895, owned the coal underlying about 2,400 acres of land within Cambria county, Pennsylvania. This he acquired by purchase from various persons, in some cases acquiring also the surface and in other cases only the coal. Prior to his death he made a verbal agreement with the Black Lick Mining Company to make a lease of part of this land, and under this arrangement a mine was opened and coal extracted by the company. In execution of this agreement after his death his executors under due authority leased this tract to the mining company which from that time up to the present has been engaged in mining coal therefrom and has now practically

exhausted the coal upon the vein opened within the boundaries of the tract leased to it.

The will of Charles McFadden after sundry bequests and devises of personal and real property gave the rest, residue and remainder of his estate unto the Equitable Trust Company in trust "to invest, reinvest and keep the same safely invested and to pay the net income arising therefrom in equal quarterly payments unto my wife, Sarah Amanda, as long as she shall live." The royalties arising under the lease above referred to have since its execution been paid over to the widow. The will conferred no power of sale upon the trustee with respect to the residuary estate.

In 1907, the trustee made application to the orphans' court of Cambria county, under the Price act and under due proceedings received authority to make a mining lease to the same company for the coal in the same vein and underlying another portion of the land owned by Mr. McFadden in his lifetime and adjoining the tract included in the lease of 1895. The widow claimed that the royalties received by the trustee under this lease were income under the terms of the will.

The claim was allowed by the auditing judge and by the court in banc.

*Error assigned* was decree dismissing exceptions to adjudication.

*H. B. Gill*, with him *John R. Read* and *Louis B. Runk*, for appellant.—It would seem to be settled that where the lease is made in the lifetime of the testator or where the lease is made by the trustee under a power given in the will to make the lease, the royalties are to be considered as income and paid to the life tenants, the effect in the latter case being said to be the same as if the lease had been made by the testator in his lifetime and at least as evidencing his intention of empowering his trustees to make the coal productive of profit for the benefit of the life tenants.

No case, however, so far as counsel has been able to ascertain, has laid down the rule that where the trustee has no

power of sale or lease under the will that the purchase price of the coal, whether it be a lump sum or by periodical payments mined, is to be considered as income for the life tenant: Blakely v. Marshall, 174 Pa. 425.

*John G. Johnson*, with him *Maurice Bower Saul*, for appellee.—The life tenant, without impeachment for waste, may sink new shafts upon the same vein in order that the coal may be more easily mined: Kier v. Peterson, 41 Pa. 357; Sayers v. Hoskinson, 110 Pa. 473.

It is argued by the appellant that the lack of power in the trustee to lease or sell under the will of the testator takes this case from the rulings of this court in numerous decisions upon similar questions. It is, however, difficult to see the force of their contention upon an examination of the cases: Wentz's Appeal, 106 Pa. 301; McClintock v. Dana, 106 Pa. 386; Eley's App., 103 Pa. 300; Woodburn's Est., 138 Pa. 606; Shoemaker's App., 106 Pa. 392; Bedford's App., 126 Pa. 117; Duffy's Est., 209 Pa. 390.

The right of the appellee is to receive the income from the opened mine—her rights are the rights of the testator and the vein may be pursued to the boundaries of the tract and even exhausted: Westmoreland Coal Co.'s Appeal, 85 Pa. 344.

It is immaterial for what purpose the mine was opened. It is not necessary that coal be actually mined and sold to constitute an opened mine: Neel v. Neel, 19 Pa. 323.

Opinion by Mr. Justice Elkin, April 12, 1909:

The question to be determined here is whether the royalties required to be paid under the coal mining lease executed by virtue of the authority and decree of the orphans' court of Cambria county in 1908, shall be deemed income payable to the widow under the terms of the will, or shall they pass into the residuary estate as principal to be invested by the trustee, the income only of the invested sum to be paid the widow. There is no difficulty as to the application of the underlying principles upon which the decision of this case rests. If the coal lands described in the lease had been sold under a decree

of court at a fixed price or consideration, there can be no question but that the thing sold would be under these circumstances part of the corpus of the estate, and the amount received in payment of the thing sold would be principal. Nor is it open to doubt, under the settled rule of our cases, that a lease to mine all the coal underlying a tract of land described in the conveyance upon the payment of certain specified royalties, amounts to and is the equivalent of a sale of the coal in place. The right to mine the coal to exhaustion is the equivalent of a grant of all the coal, and the payment for the coal mined at a certain rate per ton is the consideration price paid. If there was nothing else in the case there could be only one answer to the question here raised, and that answer is, that the royalties represent the purchase price and should be treated as principal. It is contended, however, and the learned orphans' court below took this view of the question, that the intention of the testator was to give these royalties as income to his wife, or if the testator did not so provide, the widow as tenant for life took the royalties as income under the common-law rule followed in our state which gives the life tenant the right to mine opened mines to exhaustion without being chargeable with waste and to enjoy the profits arising therefrom. We cannot agree that the intention of the testator shown by the residuary clause or from the four corners of the will justifies such a conclusion. The wife was given the income of the corpus of the residuary estate, the title to which passed under the terms of the will to the trustee. The coal lands in question were part of the corpus of the trust estate. The will did not provide for a sale or conversion of these lands. There were no open mines on the particular lands described in the lease above referred to. Under these circumstances, how can it be said that the testator intended his wife to take as income what he held as corpus and for the sale or conversion of which he made no provision? Clearly, the intention of the testator to give to his wife as income royalties not contracted for at the time of his death, and which were not then contemplated or provided for, cannot be gathered from the terms of the will itself, nor from any other source.

The settled rule that it is not waste about which remainder-men can complain for a life tenant to work an open mine to exhaustion has no application to the facts of the case at bar. It is very doubtful whether the widow here is a life tenant within the meaning of the rule. The common-law rule rested on a very different foundation. It had its origin in a case where the testator had devised a tract of land, limited in area, on which was an open mine, to one for life, and then over to others. The question arose whether it was waste for the life tenant under these circumstances to mine, use and sell coal from a mine opened in the lifetime of testator. It was held not to be waste and that the life tenant had the right to pursue the mine even to exhaustion. This rule found favor in our earlier cases and has become a rule of property in Pennsylvania. There is no disposition to weaken or destroy it and it must be considered as settled law when the facts of a case justify its application. The rule, however, has its limitations, and must not be unduly and unreasonably extended. As, for instance, suppose the testator in the present case was possessed at the time of his death of a homestead farm containing 200 acres upon which there was an open mine for country use, and adjacent to the homestead he owned 10,000 acres of undeveloped mineral lands, could it be seriously contended that because the life tenant could work the open mine on the homestead to exhaustion, that this included the right to lease upon royalty the coal underlying the 10,000 acres of mineral lands and to receive the consideration paid in royalties to the exclusion of the remainder-men. No reasonable interpretation of the rule can make it applicable to such a state of facts. Such a situation was not contemplated when the rule was first announced and it would do violence to the spirit and purpose of it to require its application under such circumstances. In the present case there was an outstanding lease for a limited number of acres belonging to the testator at the time of his death upon which there was a mining operation. There were at least two openings on this property, but these lands were segregated from the other lands of the testator by lease itself, and there can be no reason in law or equity why the rule should be

extended beyond the boundaries fixed by the testator himself. We hold, therefore, that there was no open mine in the lifetime of the testator on the lands included in the lease of 1908 and the rule as to the rights of a life tenant does not apply. The royalties received, or to be received, under the terms of this lease are principal and not income and should be so regarded and treated.

Decree reversed and record remitted with instructions to make the distribution in accordance with the views herein stated. Costs to be paid out of the trust estate.