ARTHUR H. FLEMING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARJORIE FLEMING LLOYD-SMITH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 4502, 7017, 4449, 7103.    Promulgated April 19, 1927.

1. Distributions made to petitioners as beneficiaries under trusts, the income of which consisted of royalties from mining properties, *held* to be income and taxable to the life beneficiaries.

2. Beneficiaries under the trusts *held* not entitled to depletion on account of removal of ore from properties forming a part of the corpus of the trusts.

*Ralph W. Smith, Esq., H. J. Goudge, Esq.,* and *H. H. Tooley, C. P. A.,* for the petitioners.

*A. Calder Mackay, Esq.,* for the respondent.

These proceedings involve deficiencies in income taxes as follows:

| Year. | Arthur H. Fleming. | Marjorie Fleming Lloyd-Smith. |
|-------|-------------------:|------------------------------:|
| 1917 | $1,412.91 | $17,944.33 |
| 1918 | 4,218.26 | 32,208.37 |
| 1919 | 6,021.94 | 24,223.52 |
| 1920 | 3,704.38 | 22,811.30 |

There are three questions presented by the pleadings. They are: (1) Whether distributions made to petitioners as beneficiaries under trusts, the income of which consisted of royalties for the use of mining properties, are taxable as income; (2) whether petitioners are entitled to deductions for depletion of the iron ore in the properties forming the corpus of the trusts; (3) whether the Commissioner correctly computed the depletion he allowed.

By the terms of his will Eldridge M. Fowler, who died on November 7, 1904, created two trusts, designated herein for convenience as the Fowler Mining Trust and the Fleming Mining Trust.

The material portions of the will relating to the Fowler Mining Trust are as follows:

### PARAGRAPH XIII

I give, devise and bequeath one-half of all my real estate and interest in real estate situate in the Counties of Cook, Lake, St. Louis and Itasca, in the State of Minnesota, and one-half of all my mineral rights, rights in minerals, ores and fossils, mineral reservations and surface rights in said Counties of Cook, Lake, St. Louis and Itasca, in said State of Minnesota, and one-half of all my stock in corporations owning mines, mineral lands or mineral rights in said State of Minnesota and in mining corporations and corporations engaged in mining in said State; excepting, however, my real estate situate in the City of Duluth in said State, to my daughter Kate when she shall arrive at the age of forty-five years if she shall live so long, with the power to dispose thereof by will at any time before she shall arrive at the age of forty-five years; and if she shall die intestate as to such property before arriving at the age of forty-five years, then to her child or children, * * * and if she shall leave no child or children * * * then the one-half thereof to my wife, Margaret B. Fowler, * * * and the remaining one-half thereof to my granddaughter Marjorie Fleming, when she shall arrive at the age of forty years, * * * and if my said wife shall not survive my daughter Kate, then the whole thereof to my granddaughter Marjorie Fleming when she shall arrive at the age of forty years, * * *.

Subject, however, to the following trust viz: My wife Margaret B. Fowler, my son-in-law Arthur H. Fleming, my daughter Clara H. Fleming, my daughter Kate Fowler, provided she has attained her majority at the time of my decease, and if not, then when she attains her majority, and my nephew Harold F. McCormick, and their successors in trust, shall, until it shall be ascertained in whom the absolute title to said property so devised and bequeathed is vested,

hold in trust said property so devised and bequeathed for the purposes herein expressed.

I—They shall have full charge, possession and control of said property so devised and bequeathed; they may make mining or other leases and change leases in existence at the time of my decease, as they may deem best; they shall collect all royalties, dividends, rents and income from said property and do all things necessary to preserve the same * * *.

The property embraced in the Fleming Mining Trust consisted of the remaining one-half of that described in Paragraph XIII of the will. This property, subject to a trust in terms the same as the Fowler Mining Trust, was given by the terms of the will as follows:

* * * To my granddaughter Marjorie Fleming, when she shall arrive at the age of forty years, if she shall live so long, with the power to dispose thereof by will at any time before she shall arrive at the age of forty years; and if she shall die intestate as to such property before arriving at the age of forty years, then to her child or children, and to the issue of any deceased child or children her surviving, such issue of any deceased child or children to take the parent's share by right of representation; and if she shall leave no child or children, nor issue of any deceased child or children, her surviving, then to my daughter Kate, when Kate shall arrive at the age of forty-five years, if she shall live so long, and if she shall die before arriving at the age of forty-five years, then to the child or children and to the issue of any deceased child or children of my said daughter Kate, if she shall leave any her surviving, such issue of any deceased child or children to take the parent's share by right of representation; and if my said daughter Kate shall leave no child or children nor issue of any deceased child or children her surviving, then to my heirs forever.

The will provided for the distribution of the income of the trusts, after payment of taxes and expenses, in the following proportions:

| Beneficiaries. | Kate Fowler Mining Trust. | Marjorie Fleming Mining Trust. |
|---|---|---|
| | Per cent. | Per cent. |
| Kate Fowler (daughter) | 75 | |
| Margaret Fowler (wife) | 17 | 17 |
| Arthur Fleming (son-in-law) | 8 | 8 |
| Marjorie Fleming (granddaughter) | | 75 |

At the time of the death of the testator certain of the mining properties in which he had an interest, namely those known as Fayal No. 2, Fayal No. 3, Adams, Spruce, and Cloquet, were under lease to the Minnesota Iron Co., a corporation, for a period of 50 years from January 1, 1902. These properties, hereinafter called the consolidated properties, had previously been leased to various parties, the previous leases being acquired by the Minnesota Iron Co. The lease to the Minnesota Iron Co. will hereinafter be designated the consolidated lease.

The consolidated lease provided that the ore mined and shipped by the lessee should be graded into first and second grades, with royalties per ton on the first grade ore as follows:

| | Cents per ton. |
|---|---|
| First 13 years (January 1, 1902, to December 31, 1914) | 30 |
| Next 7 years (January 1, 1915, to December 31, 1921) | 37 |
| Next 5 years (January 1, 1922, to December 31, 1926) | 42 |
| Balance of term (January 1, 1927, to December 31, 1951) | 45 |

Royalties on second grade ore were fixed by the lease at 15 cents per ton less than those on the first grade and the amount to be considered second grade was fixed at certain percentages of the total output.

Subsequent to the death of the testator the trustees of the Fleming and Fowler Mining Trusts gave leases under various dates on three other pieces of property in Minnesota forming a part of the corpus of the trust.

The properties leased under the consolidated lease consisted of five parcels containing iron ore and located on what is known as the Mesaba Range near Eveleth, Minn. Of these properties three are mined by the open pit method and two by underground mines. At March 1, 1913, about 35 per cent of the ore was available by open pit mining and it was known then that the stripping area would be greatly extended. About 60 per cent of the available ore will eventually be recovered by open pit mining. The mines are located on land that is from 100 to 200 feet above the general level of the surrounding country and there was no danger in 1913 of the mines being flooded. There was no fire hazard in the open pit mines and little if any in the underground mines, as the air in them was moist, which made the timbers noninflammable. There was no danger from gas, fire damp, or underground explosions in any of the mines operated under the consolidated lease, nor was there any danger of cave-ins, due to careful methods of operation.

The ore in the consolidated properties was close to the surface and easily mined. The mining operations have been so conducted as to take out some of both the high grade and the low grade ores. The produce has been exceedingly uniform, varying only from a low of about 59.71 per cent to a high of 60.23 per cent.

The lessee, the Minnesota Iron Co., is a subsidiary of the United States Steel Corporation, and is a responsible company from the standpoint of the payment of royalties being assured during the life of the lease.

In 1913 royalty rates for bodies of ore inferior in quantity and quality to those of the consolidated properties ranged from 60 cents to $1 per ton.

Reasonable estimates, as of March 1, 1913, of the ore reserves of the consolidated properties, the rate of mining and the expected royalties, are as follows:

|  | Tons. |
|---|---|
| Total ore in mines, first and second grade | 53, 455, 468 |
| Second grade ore in mines | 7, 107, 078 |
| Rate of mining per year for 22 years, first and second grade | 2, 429, 794 |
| Rate of mining per year for 22 years, second grade ore | 323, 049 |
| Expected gross royalties | $20, 899, 276. 06 |
| Less 3 per cent for expenses | 626, 978. 29 |
| Net expected royalties | 20, 272, 297. 77 |

By applying to the net expected royalties of $20,272,297.77 under the consolidated lease, the Hoskold formula factors of 6 per cent interest rate and 4 per cent capital redemption rate, the Commissioner determined the fair market value as of March 1, 1913, of the ore reserve in the consolidated properties, for depletion purposes, to be $10,287,970.24.

Reasonable estimates as of March 1, 1913, of the ore reserves, the life of the mines, and the expected royalties from the other properties of the mining trusts are as follows:

| Mine. | March 1, 1913, ore reserves. | Life of mine. | Gross expected royalties. | Expenses. | Net expected royalties. |
|---|---|---|---|---|---|
|  | Tons. | Years. |  | Per cent. |  |
| Fayal No. 1 | 2, 783, 691 | 22 | $1, 251, 139. 90 | 3 | $1, 213, 605. 70 |
| Park Lot No. 1 | 53, 152 | 5 | 31, 891. 20 | 3 | 30, 934. 46 |
| Park Lot No. 2 | 132, 600 | 3 | 132, 600. 00 | 3 | 128, 622. 00 |
| Cloquet No. 2 | 212, 500 | 5 | 85, 000. 00 | 3 | 82, 450. 00 |
| Meadow Mine | 153, 933 | 7 | 46, 179. 90 | 3 | 44, 794. 50 |

By applying to the net expected royalties from these properties the Hoskold formula factors of 6 per cent interest rate and 4 per cent capital redemption rate, the Commissioner determined the fair market value as of March 1, 1913, of the ore reserves for depletion purposes, to be as follows:

| Fayal No. 1 | $618, 437. 69 |
|---|---|
| Park Lot No. 1 | 25, 291. 09 |
| Park Lot No. 2 | 94, 644. 30 |
| Cloquet No. 2 | 67, 408. 65 |
| Meadow Mine | 34, 291. 98 |

The rate of interest on commercial investments on March 1, 1913, was about 4½ per cent.

In determining the deficiencies involved in these appeals the Commissioner allowed to the petitioners deductions for depletion of the mines, based on the March 1, 1913, value of the interests of the trusts

therein computed by the application of Hoskold's formula as above set forth. In the answers to the petitions the Commissioner avers that he erred in allowing any deduction for depletion.

OPINION.

ARUNDELL: The petitioners contend that the royalties they received as beneficiaries under the mining trusts constituted a distribution of the corpus of the trusts and as such constituted property acquired by gift or bequest and are not taxable. That royalties from mining ore are income and not the return of capital has been settled ever since the decisions in *Stratton's Independence* v. *Howbert*, 231 U. S. 399; 34 Sup. Ct. 136; and *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 503; 37 Sup. Ct. 201. The Supreme Court has also held that income from a trust created by a will is taxable to the beneficiary. *Irwin* v. *Gavit*, 268 U. S. 161; 45 Sup. Ct. 475. The latter case arose under the Act of October 3, 1913, which, like the acts here involved, excluded from income "the value of property acquired by gift, bequest, devise, or descent" but included the income from such property. After quoting part of the 1913 Act the court said:

The language quoted leaves no doubt in our minds that if a fund were given to trustees for A for life with remainder over, the income received by the trustees and paid over to A would be income of A under the statute. It seems to us hardly less clear that even if there were a specific provision that A should have no interest in the corpus, the payments would be income none the less, within the meaning of the statute and the Constitution, and by popular speech. In the first case it is true that the bequest might be said to be of the corpus for life, in the second it might be said to be of the income. But we think that the provision of the act that exempts bequests assumes the gift of a corpus and contrasts it with the income arising from it, but was not intended to exempt income properly so-called simply because of a severance between it and the principal fund. No such conclusion can be drawn from *Eisner* v. *Macomber*, 252 U. S. 189, 206, 207. The money was income in the hands of the trustees and we know of nothing in the law that prevented its being paid and received as income by the donee.

\*        \*        \*        \*        \*        \*        \*

\* \* \* This is a gift from the income of a very large fund, as income. It seems to us immaterial that the same amounts might receive a different color from their source. We are of opinion that quarterly payments, which it was hoped would last for fifteen years, from the income of an estate intended for the plaintiff's child, must be regarded as income within the meaning of the Constitution and the law.

The respondent asserts that he erred in allowing depletion to the petitioners who are beneficiaries under the trust estates here involved. Whether or not this is so depends upon the construction

to be given section 219 of the Revenue Act of 1918, which, as far as material here, provides:

SEC. 219. (a) That the tax imposed by sections 210 and 211 shall apply to the income of estates or of any kind of property held in trust, including—

*        *        *        *        *        *        *

(4) Income which is to be distributed to the beneficiaries periodically, whether or not at regular intervals * * *.

*        *        *        *        *        *        *

(d) In cases under paragraph (4) of subdivision (a) * * * the tax shall not be paid by the fiduciary, but there shall be included in computing the net income of each beneficiary his distributive share, whether distributed or not, of the net income of the estate or trust for the taxable year * * *.

This section was involved in the case of *Baltzell* v. *Mitchell*, 3 Fed. (2d) 428; 5 Am. Fed. Tax Rep. 5230; certiorari denied, 268 U. S. 690. In that case it was held that a loss of a part of the capital of a trust fund does not constitute a loss to the beneficiaries even where one of them had a " vested equitable remainder " in the corpus. The court says, in part:

In considering section 219 alone and apart from the other sections of the act, it is evident that in it Congress employed words which lead to confusion of thought. It states under subdivision (d) that the income under paragraph 4 on which the tax is to be assessed and collected shall be " his distributive share, whether distributed or not, of the net income of the estate or trust for the taxable year." The beneficiary clearly has no distributive share in the net income of the estate or trust; but he has a distributive share of income to be paid him under and in accordance with the terms of the trust, and resort must be had to them to ascertain his proportion of the income or his distributive share.

A simple example will illustrate the soundness of this holding. Suppose that in a taxable year rents in the amount of $10,000 were collected by the trustee from trust property and distributed to a sole beneficiary, and in the same year the trustee sold a part of the trust corpus at a loss of $10,000. Here the loss sustained by the trustee exactly offsets its income, yet the beneficiary, in accordance with the terms of the trust, has received $10,000 which under *Irwin* v. *Gavit*, *supra*, is taxable income, nor could the creator of the trust, by any direction of his, relieve the income from tax. *Merchants' Loan & Trust Co.* v. *Smietanka*, 255 U. S. 509; 3 Am. Fed. Tax Rep. 3102. Continuing in the *Baltzell* case the court says:

* * * The beneficiary is not interested in the capital of the trust, but only in the income. If there are accretions to the capital, these are not distributable as income, so that the beneficiary may receive any part of them * * *.

This is in accordance with *Gibbons* v. *Mahon*, 136 U. S. 549, holding that a stock dividend on stock held in trust is an appreciation in the capital of the trust corpus and not distributable to a life bene-

ficiary. The converse of this last proposition is then set out in the *Baltzell* opinion as follows:

* * * And if there are capital losses they cannot be made good out of the income. The capital may be depleted by such losses; but the income for that taxable year is not.

This follows the principle that unless the trust instrument provides otherwise, a trustee can not withhold from the beneficiary any of the income to compensate for a decrease in the value of the trust property from which the income is derived. *In re Chapman*, 66 N. Y. S. 235; affirmed 69 N. Y. S. 1131. Similarly, where mines already opened comprise the corpus of a trust estate a life tenant may work the mines even to the point of exhaustion and enjoy the profits therefrom without being chargeable with waste. *Hook* v. *Garfield Coal Co.*, 112 Iowa 210; 83 N. W. 963; *In re Woodburn's Estate*, 138 Pa. St. 606; 21 Atl. 16; *In re McFadden's Estate*, 224 Pa. 443; 73 Atl. 927; *Higgins Oil & Fuel Co.* v. *Snow*, 113 Fed. 433.

Another phase of the question here involved is treated of in the *Baltzell* case where it is pointed out that if losses sustained by trusts were allowed to the beneficiaries the result would be to defeat the intent of Congress as expressed in sections 210 and 211 to impose taxes on the incomes of individuals. The language of the court is as follows:

Under section 210 Congress enacted that a normal income tax "should be levied, collected and paid for each taxable year upon the net income of every individual" at the rates therein provided, and by section 211 that, in addition to the normal tax, a surtax should be levied, collected, and paid upon the net income of every individual.

It cannot be supposed that Congress intended that the taxes under sections 210 and 211 should be paid by an individual who was engaged in some business or gainful occupation which yielded an income upon which such tax could be levied and collected, and also provided that the beneficiary of a trust, although paid a large amount in accordance with the terms of such trust, should escape all taxation upon the amount so paid, because the trust, as such, through losses of capital, did not show a net income. The fiduciary and the beneficiary are separate taxable persons. *Merchants' Loan & Trust Co.* v. *Smietanka*, 255 U. S. 509, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305.

Earlier in the opinion the court, following well-known rules of construction, says:

* * * Section 219 must be interpreted and construed as a part of the whole act, and having in mind the purpose sought to be accomplished by it. The court cannot read into the statute anything that is not there; but it must look at the whole act, having its purpose in mind, and determine whether the interpretation placed by the Treasury Department upon section 219 of the act is reasonably within its terms.

The Commissioner ever since the promulgation of Treasury Decision 2987, dated March 1, 1920, adding article 347 to Regulations No. 45, has held that for income tax purposes the distributive share of a

beneficiary is not changed by either capital gains or losses or by depreciation of the corpus of the estate. This interpretation of section 219 is characterized in the *Baltzell* case as " a sensible and reasonable one, and within its scope when considered as a part of the whole act."

Depreciation, we have held, in the *Appeal of Louise P. V. Whitcomb*, 4 B. T. A. 80, " relates to capital assets. The depreciation is not in the income but in the capital, and it affects income only in that, if the depreciable assets are not replaced, the income sooner or later will cease." It will hardly be said that depletion has any less relation to capital assets or any closer relation to income than has depreciation.

Nowhere in the Revenue Act of 1918 is there any provision allowing deductions to beneficiaries of estates or trusts for diminution of capital, and the Revenue Act of 1921 by sections 215(b) and 219(d) expressly provides against such deduction as is here claimed. While section 215(b) of the 1921 Act is a new provision, section 219 is merely an amendment of a similar provision in the prior act. As stated on page 16 of the Senate Finance Committee Report on the Revenue Bill of 1921 (Rep. No. 275, 67th Cong., 1st sess.) :

Section 219 is amended slightly for the purpose of clarifying its provisions and making the interpretation thereof more definite and certain. * * *

That resort may be had to subsequent legislative acts for interpretive aid is shown by the case of *Bailey* v. *Clark*, 21 Wall. 284; 4 Am. Fed. Tax Rep. 4575, where the court said of a later act than the one involved :

This enactment was evidently intended to remove any doubt previously existing as to the meaning of the statute and declare its true construction and meaning. Had it been intended to apply only to cases subsequently arising it would undoubtedly have so provided in terms.

We are aware of the rule to the contrary that taxing provisions in an act may not be applied to cover an omission in an earlier act. *Smietanka* v. *First Trust & Savings Bank*, 257 U. S. 602; 3 Am. Fed. Tax Rep. 3145. But such is not the case here, for as pointed out above, section 219 was amended solely " for the purpose of clarifying " the provisions of the previous act " and making the interpretation thereof more definite and certain."

Even without resort to the Act of 1921 we think the Commissioner must be sustained in his allegation of error in allowing depletion to the petitioners, for the cases here can not be distinguished in principle from several that the Board has heretofore decided.

The first of these is *Appeal of Mary P. Eno Steffanson*, 1 B. T. A. 979, where the taxpayer placed her property in trust under an agreement whereby she was to receive the income for life, except for an amount to be paid to her mother, she retaining the right

to withdraw a part of the principal and a limited right to direct the investment of the principal, and the principal to be ultimately disposed of as the taxpayer should direct in her will. In 1919 the trustee sold certain property, in which a part of the trust principal had been invested, at a loss and sold other property at a profit. The transaction resulted in a net loss which the taxpayer claimed as a deduction from her income for that year. The claim was disallowed, the opinion citing the *Baltzell* case, *supra*, and reading in part:

Capital losses of a trust estate are deductible only by the trust, and the beneficiaries with life interests must report for taxation the income received by them from the proceeds without deduction of losses suffered by the corpus of the trust estate.

In *Appeal of C. D. Woodard*, 2 B. T. A. 432, the petitioner had a legal one-third life estate in the estate of his deceased wife. His entire income for the year 1920 consisted of oil royalties from the estate. The Commissioner disallowed a claim for depletion and treated the entire amount of royalties received as taxable income. The Board, without an opinion, sustained the Commissioner.

In the *Appeal of George M. Studebaker*, 2 B. T. A. 1020, there was involved a testamentary trust under which testator's wife and three children were named and qualified as trustees. The trust was to continue during the life of testator's wife or until a disagreement should thereafter arise among the remaining trustees, with the remainder then to the three children or their heirs. During the existence of the trust, the income, after payment of a specific amount to the wife, was to be divided equally among the three children. After the death of their mother the children during the years 1918, 1919, and 1920 continued the operation of the property comprising the corpus of the trust. In each of those years losses were sustained in the operation of the trust property and the children in filing individual returns each claimed as a deduction one-third of such loss. It was held that such deductions were not allowable, the opinion reading in part:

Acts done by the taxpayers in their individual capacities and those performed by them as trustees are separate and distinct, and losses sustained by them as trustees can not be claimed as losses sustained as individuals. [Citing *Baltzell* v. *Casey*, 1 Fed. (2d) 29.]

The *Appeal of Henry Stoddard*, 3 B. T. A. 79, holds, without opinion, that a beneficiary under a revocable trust, the beneficiary being also the creator of the trust, is not entitled to deductions for the years 1919, 1920, and 1921 on account of losses on the sale by the trustees of securities forming a part of the trust corpus.

In the *Appeal of Helene R. McConnell*, 3 B. T. A. 260, the taxpayer was a life tenant under a testamentary trust, the corpus of

which consisted of a brewery. The taxpayer claimed deductions for the years 1918, 1919, and 1920 for the exhaustion of her estate due to lapse of time and for impairment of the value of her estate due to the advent of prohibition. It was held that such deductions as were claimed are allowable only in respect of property used in trade or business and that the right of the taxpayer to share in the income of the estate was not such property.

The *Appeal of Louise P. V. Whitcomb*, 4 B. T. A. 80, involved a testamentary trust for the life of testator's wife and two children with remainder over to grandchildren, if any, and if none, then to Harvard College. The Commissioner allowed the trustee deductions for the exhaustion of the depreciable assets of the trust corpus, for the years 1919 to 1920 inclusive, but denied any deduction therefor to the life tenants. The decision in that case followed that in *Baltzell* v. *Mitchell*, *supra*, and approved the action of the Commissioner.

In the *Appeal of Elizabeth M. Abell*, 4 B. T. A. 87, the taxpayers were life tenants and trustees under a testamentary trust and one of them was a remainderman. In the years 1919 and 1920 the trust estate sustained losses on sales of securities held as capital assets of the trust. The beneficiaries in filing returns reported their proportionate shares of the income of the trust as reduced by the losses sustained. The Commissioner added to the incomes of the beneficiaries their proportionate parts of the losses. The Board on the authority of the decision in the *Appeal of Louise P. V. Whitcomb*, *supra*, sustained the action of the Commissioner.

In the *Appeal of Sophia G. Coxe*, 5 B. T. A. 261, the taxpayer was a life tenant under a will and had no interest in the principal or remainder of the estate. It was there held that such beneficiary is not entitled to deductions for the year 1919 on account of losses sustained by the estate on the sale of securities.

One case, the *Appeal of Julia N. De Forest*, 4 B. T. A. 1059, contains language which might be construed to take a contrary view. The basis of that decision, however, is found in the last paragraph of the opinion, wherein it is stated:

   * * * Where it is shown, as it was here, that it was the beneficiary who created the trust for himself and that he is also the remainderman, we find no justification for the conclusion that he may not get the benefit of the allowance for the exhaustion of his property temporarily and for convenience only in the hands of a trustee to collect the income and pay it to him. We think in cases of this character the separate entity of fiduciary and beneficiary should be ignored and that the petitioner should be allowed a deduction for the exhaustion of her interest in the patent.

In the *De Forest* appeal the trustee was designated merely as an instrumentality for the purpose of collecting the income and paying it over to the same persons who had theretofore owned the patents and continued to own them beneficially to the same extent. In such situation it was unnecessary to either overrule or reconsider what the Board had already held to be the law in the appeals hereinbefore set out.

Under authority of *Baltzell* v. *Mitchell*, *supra*, and previous decisions of the Board herein set forth at length, we conclude that the Commissioner erred in allowing depletion to the petitioners in the present case.

The third question presented is whether the Commissioner has allowed sufficient depletion on the basis of the March 1, 1913, value fixed by applying the so-called Hoskold formula of a 6 per cent remunerative rate and a 4 per cent capital redemption rate to the expected royalties under the mining leases. As we have held above that the petitioners are not entitled to deductions for depletion, the question whether the Commissioner properly computed the depletion allowance falls by the way and requires no decision.

> *Judgment will be entered on 15 days' notice, under Rule 50.*