# Richmond

## W. R. GRAHAM, JR., AND OTHERS v. HETTIE G. SMITH.

April 28, 1938.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*T. C. Bowen, R. O. Crockett* and *Joseph S. Gillespie,* for the appellants.

*V. L. Sexton, Edmund D. Campbell, V. L. Sexton, Jr.,* and *Stuart T. Saunders,* for the appellee.

HOLT, J., delivered the opinion of the court.

This case deals with the dower rights of a widow, Hettie G. Smith, in coal lands owned by her husband, J. M. Smith, who died intestate.

He was twice married. By the first marriage, there were four children surviving: Thomas T. Smith, Mae S. Graham, wife of W. R. Graham, Pearl S. Cecil, wife of J. A. Cecil, and Charles B. Smith.

W. R. Graham, Jr., one of the appellants here, is the only son and heir at law of Mrs. Mae S. Graham, and Mrs. Edna Bonham Smith is the sole devisee and legatee of Charles B. Smith, deceased.

By contract of date June 15, 1906, J. M. Smith and J. C. Smith, his first wife, leased to the Pocahontas Collieries Company certain coal lands in which they undertook "to let and lease to the said party of the second part, lessee,

for the period of one hundred (100) years from the date hereof, the sole and exclusive privilege of mining coal and manufacturing coke from the veins or seams of coal in, upon and under all that certain tract, piece or parcel of land, containing 353.79 acres, more or less, situate, lying and being principally in the county of Tazewell."

The lessee was to pay "a fixed minimum royalty or rental of $6.25 per annum for each acre of the said land for the first five years after the lease was made, and thereafterwards, agreed to pay a certain fixed minimum royalty or rental of $12.50 per acre for each acre thereof, and in addition thereto, as shown by Article XII of the lease (record page 46), the lessee agreed 'to either mine or pay for all coal in said Pocahontas No. 3 vein and in the Upper Smith vein of coal, underlying said tract of 353.79 acres, within the period of thirty years from the date of this lease, at the rate of ten cents per ton of 2,240 pounds.' " Appellants' brief.

The contract further provided that all rents and royalties were to be treated as rents reserved by the lessor. Smith and wife owned a one-third interest in this land and in this lease the other owners joined. As incidental to its main rights, certain surface rights were also to be conveyed.

That brief further contains this proper statement of the situation:

"After thirty years from the date of the said lease, the lessee paid into the registry of this court, in this case, the sum of $159,361.62, being what it then claimed as the amount due to be paid by it under the lease by way of royalties and rentals. John M. Smith died on the 12th day of April, 1929, and if he had lived, would have been entitled to one-third of the said sum of money. His widow, the appellee, claims that she is entitled to be endowed in the sum of $17,333.02, being one-third of one-third of the sum of money so paid into the registry of the court. The Circuit Court of Tazewell county, by the decree which is complained of, gave a recovery in her behalf for the said

sum of $17,333.02. Appellants, who are the heirs at law of John M. Smith, deny that she is entitled to that recovery."

A widow has a right to work opened mines on land assigned to her by way of dower. To do so is not waste. Her benefits so derived are but regular profits from that assignment. Minor on Real Property, secs. 290 and 431.

The questions to be decided are:

(1) Is the widow entitled to be endowed outright in the coal in the Pocahontas No. 3 vein and in the Upper Smith vein underlying the said property and to receive as such dower the said sum of $17,333.02?

(2) If the widow is not entitled to recovery of the said sum of money by way of dower, is she entitled to recover it as a distributee of her husband, John M. Smith?

It is conceded that the widow has no dower rights in these rents or royalties if mines on this property had not been opened either as a physical fact or in contemplation of law at the time of J. M. Smith's death. This we held in *Bond* v. *Godsey*, 99 Va. 564, 567, 39 S. E. 216, 217. It was there said:

"It is settled law that a life tenant has no interest in, and no right to open and work unopened mines. He may open new pits or shafts for working an old vein of coal; he may sink new shafts into the same veins; he may penetrate through a seam, or open and dig into a new seam which underlies the first, and take coal to any extent from the mine already opened, but he may not open mines. He is guilty of waste if he does, and equity will enjoin him from its commission. These propositions are so well established as to scarcely need citation of authority in their support."

This rule, varying in phraseology but not in substance, has been stated by courts and by text writers time without number, but like other rules, it must be read in connection with those facts to which it is to be applied and should be changed or modified to meet them.

"Mines and quarries owned by the husband in fee and opened and worked at any time during coverture are subject to dower. And it makes no difference whether the

husband continued to work them to the period of his death, or whether they have been continued since his death by the heir or his assignee. The right extends to lands which have been leased by the husband for mining purposes, although no mines were opened until after the right of dower had commenced. So where the land is subject to oil or gas leases, the widow is entitled to dower in the rents or royalties, even of wells thereafter drilled." 19 C. J., p. 469.

This conclusion finds support in West Virginia.

"A mine lawfully leased to be opened is an 'open mine.'" *Koen* v. *Bartlett,* 41 W. Va. 559, 23 S. E. 664, 666, 31 L. R. A. 128, 56 Am. St. Rep. 884.

"Apropos to the disposition of the main issues, we pause to observe that it is well settled law in this State and elsewhere that mines opened under a lease executed prior to the death of the lessor giving power and authority to enter, mine and remove the mineral products subject to rents and royalties reserved, will be considered open mines at the time of the lessor's death, though then not actually opened, so far as the right of the wife to dower or the husband to curtesy in such royalties is concerned. *Alderson's Adm'r* v. *Alderson,* 46 W. Va. 242, 33 S. E. 228, and authorities cited." *Bramer* v. *Bramer,* 84 W. Va. 168, 99 S. E. 329, 330. See also, *Alderson's Adm'r* v. *Alderson,* 46 W. Va. 242, 33 S. E. 228, and *Minner* v. *Minner,* 84 W. Va. 679, 100 S. E. 509.

In *Eager's Guardian* v. *Pollard,* 194 Ky. 276, 239 S. W. 39, 40, 43 A. L. R. 808, it was said:

"Mineral wells that are opened up after the death of the fee owner, but in pursuance of an express or implied power conferred by his will are not distinguishable from those opened after his death in pursuance of a contract, and in several such cases royalties realized therefrom very properly, it seems to us, have been held in other jurisdictions to be income. See Thornton on Oil & Gas, Vol. 1, section 301, and cases there cited."

This rule has met with approval in Indiana.

"Where oil or gas has been taken from land by means of wells by the owner of the fee, or he has by his sufficient contract given right to so take them to another, and thereafter the possession of the land devolves upon a tenant for life, such tenant may enjoy the use of such wells or the royalties therefrom during such tenancy as profits and income from the land in the condition in which it comes to the life tenant. *Andrews* v. *Andrews,* 31 Ind. App. 189, 67 N. E. 461; *Priddy* v. *Griffith,* 150 Ill. 560, 37 N. E. 999, 41 Am. St. Rep. 397. But, where no operations for oil or gas have been carried on by the owner of the fee or his grantee or lessee for such use, and he has not conveyed such right by lease or grant during his ownership of the fee, a tenant of the land for life has no right to operate himself for oil or gas or by lease or grant to give authority to another to do so." *Richmond Natural Gas Co.* v. *Davenport,* 37 Ind. App. 25, 76 N. E. 525, 527.

In *Priddy* v. *Griffith,* 150 Ill. 560, 37 N. E. 999, 41 Am. St. Rep. 397, it was held that a widow is entitled to payments by way of royalties on certain coal lands leased by the husband but not opened up in his lifetime. The court said that the opening of mines under this lease after the lessor's death was practically his act, viz., authorized by him. And this recognition of rights authorized before the commencement of the life estate is recognized in the late case of *Sewell* v. *Sewell,* 363 Ill. 166, 1 N. E. (2d) 492.

In *Poole* v. *Union Trust Co.,* 191 Mich. 162, 157 N. W. 430, 432, Ann. Cas. 1918E, 622, the court said:

"It has, however, long been the law that where mines were opened or the leases executed before the life estate commenced, the owner of the life estate might, in the absence of restraining words, work the mines, even to the point of exhaustion, and take the profits. *Campbell* v. *Wardlaw,* L. R. 8 App. Cas. 641; *Reed's Ex'rs* v. *Reed,* 16 N. J. Eq. 248; *Waldorf* v. *Elkhart & W. R. Co.,* 13 Ind. App. 134, 41 N. E. 396; *In re McFadden's Estate,* 224 Pa. 443, 73 A. 927; *Williamson* v. *Jones,* 43 W. Va. 562, 27 S. E. 411, 38 L. R. A. 694, 64 Am. St. Rep. 891; *In re Owsley's Estate,* 122

Minn. 190, 142 N. W. 129, and notes in 36 L. R. A. (N. S.) 1099, 1108." To the same effect see *Benson* v. *Nyman,* 136 Kan. 455, 16 P. (2d) 963. See also, *State* v. *Evans,* 99 Minn. 220, 108 N. W. 958, 9 Ann. Cas. 520, and note in 43 A. L. R., p. 814.

Principles applicable to oil wells apply also to mines.

As we have seen, there is a host of authorities to the effect that a widow has no right to open and work mines unopened at the time of her husband's death. Among them may be noted *Bond* v. *Godsey, supra;* Minor's Institutes, Vol. 2 (2d Ed.), p. 127; 1 Washburn on Real Property (6th Ed.), p. 179. But they do not deal with leases executed by the husband which went into effect during his lifetime under which he had the immediate right to collect royalties and in lieu thereof to collect rents should the lessee defer operations.

It is contended that the common law precludes the right of the widow to recover, and to support that contention, we are cited to the cause of *Stoughton* v. *Leigh,* 1 Taunt. 402.

There it appears that a husband owned many mines, some opened and some unopened. These unopened mines were covered by leases. The court there said:

"The widow was not dowable in any of the mines or strata which had not been opened at all, whether in lease or not."

This cause came under review in *Kemeys-Tynte* v. *Kemeys-Tynte* (1892) 2 Ch. Div. 211. The court, after restating the facts and the substance of its holdings, said:

"It came to this, that if at the time of the testator's death a mine was not opened at all, she was not entitled to dower. But if any leases had been made before her right to dower attached, although she was not dowable out of the mines, she was entitled to the rents and profits as incident to the reversions. So in this case, where mines have been let by the settlor before the will came into operation, the tenant for life under the will is entitled, in my opinion, to the rents and royalties as incident to the reversion of which he is tenant for life."

In *Hall* v. *Hall* [1916] 2 Ch. 488, it was said:

"Where the owner of an estate has contracted to lease mines and dies before the grant of the lease or the opening of the mine, the tenant for life under his will is entitled to receive the rents and royalties payable under the lease."

The Virginia cases are not very helpful. In *Macaulay's Ex'r* v. *Dismal Swamp L. Co.*, 2 Rob. (41 Va.) 507, it appears that the estate consisted in the main of timber lands, valuable only as such. This stand of timber was worked by the husband in his lifetime and by his trustees thereafter. Dower rights were set up and sustained upon the theory that the doweress but succeeded to a mode of enjoyment adopted by the husband himself. The court said that the situation might be likened to that of a mine already open.

In *Hawpe* v. *Bumgardner*, 103 Va. 91, 48 S. E. 554, 556, it appears that a widow, as doweress, sought to be allowed an interest in timber and to use the same. This court denied her petition because "there is no evidence that the land had ever been used for other than agricultural purposes, or that the owner had ever leased it or used it as timber land or derived revenue from the sale of timber thereon," which indicates that a valid lease might change the situation. These limitations upon the rights of life tenants rest in the law of waste and in the ever present purpose of the common law under the feudal traditions to protect and to preserve estates in remainder.

"Like other tenants for life, the restriction upon her exercise of ownership is to be found in the law of waste." *Macaulay's Ex'r* v. *Dismal Swamp L. Co.*, 2 Rob. (41 Va.) 507.

Here the widow has committed no waste, she has opened no mine, she has done nothing. This mine was opened under authority given by the husband, which authority went into effect during his lifetime, and the situation is not changed by the fact that the mine in truth was not opened until after his death. Rents and royalties were due and payable before that event. Nothing that the lessee did was

authorized by the widow, and she could not have restrained this Collieries Company even had she desired to do so.

■ Whether we regard this mine as an open mine, or whether we regard it as a case in which the tenant for life is entitled to rents and royalties as incident to the reversion of which she is life tenant, makes no difference. In either event, the decree appealed from must be sustained.

■ We may approach this cause from another angle. The lease under review is a lease and not a sale of coal in place. *Rorer Iron Co.* v. *Trout,* 83 Va. 397, 2 S. E. 713, 5 Am. St. Rep. 285; *Cowan* v. *Radford Iron Co.,* 83 Va. 547, 3 S. E. 120; *Shenandoah Land & Anthracite Coal Co.* v. *Hise,* 92 Va. 238, 23 S. E. 303; *Browning* v. *Boswell,* 215 F. 826; *Von Baumbach* v. *Sargent Land Co.,* 242 U. S. 503, 37 S. Ct. 201, 205, 61 L. Ed. 460. It is true that in this last case the court followed the State court of Minnesota in the construction of a Minnesota contract but said:

"These conclusions of the Supreme Court of Minnesota, are not only made concerning contracts in that state, such as are here involved, but are supported by many authorities."

Indeed, in our lease the rentors describe themselves as landlords, and we shall treat them as such, although a different rule seems to have obtained in Pennsylvania. *In re Lazarus' Estate,* 145 Pa. 1, 23 A. 372; *In re McFadden's Estate,* 224 Pa. 443, 73 A. 927.

J. M. Smith, before his death, had leased his land for a term of years. Rents or royalties had either been paid or were then due.

■ The annual payments provided for on an acreage basis were, of course, rents. The royalties were also rents. "We do not doubt that royalty reserved by the owner of the land is rent." *Palmer* v. *Bender,* 57 F. (2d) 32, 35.

In ascertaining the general character of the contract in judgment compare *Young* v. *Ellis,* 91 Va. 297, 21 S. E. 480.

Professor Graves, in considering a situation like that at bar, said in his notes on Real Property, p. 478:

"(1) Lease by B before marriage for a term of years, reserving rent during the term. B. marries F, and dies

during the term. F. shall be endowed of a third part of the reversion by metes and bounds, and receives the third part of the rent, and execution shall not cease during the years. Of course, however, she does not oust the tenant. Co. Litt. 32 a; *Herbert* v. *Wren,* 7 Cranch 370 [3 L. Ed. 374]; 1 Scribner on Dower, 230, 377; 1 Bish. Mar. Wom. sec. 273; 2 Min. Ins. (4th Ed.) 151."

In Washburn on Real Property (6th Ed.) Vol. 1, p. 181, it is said:

"If, therefore, a man make a lease for years, reserving rent, and marry, and die before the expiration of the term, his wife will not be endowed of the rent, but she may be of the reversion, and the rent *pro rata* will belong to her as incident to the reversion."

The widow's rights in substance are those which would obtain were we dealing with a mine opened by the husband himself and worked by her after his death.

The decree appealed from should be affirmed, and it is so ordered.

*Affirmed.*